Ferry v. Taylor.

---

B. EMMONS FERRY, Defendant in Error, *v.* JOHN TAYLOR, Plaintiff in Error.

*Evidence—Confidential Communication.*—Confidential overtures for pacification, or other propositions between litigating parties, are inadmissible in evidence on grounds of public policy. But an offer to pay a debt in property instead of money is not an offer of compromise.

*Agent—Authority—Note.*—If a party whose name is forged to a note by a person not his agent in any way, ratifies or adopts the act for the purpose of shielding the forger from the consequences of the crime, he does not thereby make himself liable, as principal, for the acts of an agent.

*Error to Cooper Circuit Court.*

*E. B. Ewing*, for plaintiff in error.

I. The instructions given for plaintiff all erroneously assume that there was evidence tending to show that defendant, Taylor, signed the note sued on, or authorized it to be done.

The third and sixth instructions are wrong, because they submit to the jury the question of ratification. Although the jury are to find the facts, if any, constituting ratification, they should not be left to conjecture the legal signification and sense of the term, or the legal effect of such facts — to draw their own conclusions of law. It was impossible that,

under such a charge as this, upon the state of facts before them, the jury could have performed their duty properly, or have done justice to the defendant.

The relation of principal and agent is necessarily implied by the term ratification. (Pittsburg R.R. Co. v. Gazzam, 32 Penn. 347.) The doctrine of ratification only applies where there has been an actual or intended agency. (DeBolle v. Penn. Ins. Co., 4 Whar. 68.) Ratification is only possible when the act is done in the name or for the account of the person by whom it is ratified, and is wholly inapplicable to those acts which a man does on his own account, though they may result in conferring a benefit on others. (2 Am. L. C. 176.) Where the party making the contract had not a shadow of authority to contract for the third person, and did not profess at the time to act for him, the subsequent assent of such third party to be bound as a principal has no operation. (Chit. Con. 212, 213 ; 3 T. R. 412 ; Sanderson v. Griffith, 5 B. & C. 909 ; Vere v. Ashby, 10 B. & C. 298, per Parke ; 2 Greenl. Ev., § 68.)

Neither in cases of tort or contract can the principal be made liable, unless the agent at the time of the tort or contract undertake to act for the principal. (1 Pars. Con., p. 47, n. w. & y.) An act done for another by a person not assuming to act for himself but for such other person, though without any precedent authority whatever, becomes the act of the principal if subsequently ratified by him. In that case, the principal is bound by the act, whether it be for his detriment or his advantage, and whether it be founded on tort or contract. (Tindall, C. J., in Wilson v. Turner, 6 Man. & Gran. 46 Eng. Com. L. 241.) The principal is not liable for the torts or negligences of his agent in any matter beyond the scope of his agency, unless he has expressly authorized them to be done, or he has subsequently adopted them for his own use and benefit. (Story Ag., § 456, 455 — 242, n. 2 ; 4 Coke Inst. 317.) The same rule applies to contracts where there is a mere assumption of agency.

The principle involved here, as laid down in the foregoing

authorities, is, that where there is a mere assumption of agency, or, as in the case at bar, the act is a forgery, and it is sought to make the principal liable, it must appear that the act or contract was for the benefit of the principal, or at least so intended. In other words, that the self-constituted agent must have acted for or on account of the party he assumes to represent, and not for himself; otherwise the agreement to adopt the act would be *nudum pactum*. It is not sufficient that he merely employs the name of the former when the real design in so using it is to obtain some object or gain a benefit for himself. If the act enures to his own advantage, or is performed with that intent, the principal cannot be made liable by any subsequent sanction of it.

II. The second instruction asked by defendant should have been given, because there was not the least evidence of a signing of the note by Taylor. A supposed recognition of the act afterwards was the only possible theory of the case which was at all plausible for the plaintiff Ferry; and it was upon this theory the instruction was asked.

III. The third instruction asked by defendant was proper, for, if the belief and conduct of Ferry were not induced by acts of Taylor that amounted to an estoppel, then it is immaterial what the former may have supposed concerning Taylor's liability, if he, Taylor, did not, in fact, assume the payment of the note. It is not pretended that this is a case to which the doctrine of estoppel applies. There is no evidence of any conduct or admissions of Taylor upon which Ferry was induced to act which estops and concludes him. The note was taken long before the declarations of Taylor, detailed in the evidence, were made; he was not privy to the transaction; had not authorized the use of his name; and no peculiar relations existed between the parties that could imply such authority, or any assent or acquiescence on his part. How, then, could he become liable to pay the note, unless by actually assuming its payment subsequently, according to the theory of the third instruction?

IV. The fourth and fifth instructions asked by the defend-

ant should have been given. (Pary & Orr v. Bush, 3 Mo. 314; Sparr & Green v. Wellman, 11 Mo. 237; 18 Mo. 178.) The offer to substitute another note, under the circumstances, if by way of compromise, should have been excluded from the consideration of the jury. These instructions were proper after the court had given the charge contained in the third and sixth instructions for the plaintiff.

V. The verdict is contrary to the law and the evidence. It is not pretended that there is any positive recognition or confirmation of the act of Norris by Taylor; there is no acknowledgment of it, or a promise to pay the note; nor are the circumstances in evidence sufficient to raise a presumption of ratification. Where the question of ratification arises between the agent and his principal, the acts and conduct of the principal are construed liberally in favor of the agent, and slight circumstances will sometimes raise a presumption of ratification. But there is no such rule in favor of third persons as against the principal in cases of assumed agency. The supposed assent of Taylor to the use of his name by Norris in the note to Combs was a matter of inference, from the fact of his paying it subsequently to Combs; and, even if the jury were satisfied of this fact, a single instance of this kind could not warrant a presumption of authority to sign Taylor's name, or pledge his credit a second time, even to the same party. (Add. Con. 623; Hall et al. v. Huse, 10 Mass. 39.)

When it is sought to bind a principal for acts performed by an agent acting without express authority, on the ground of a previous recognition of similar acts, it is necessary to show that the instrument in question was taken on the faith of such person's recognition. (St. John v. Redmond, 9 Port., Ala., 432; Chit. Bills, 35.)

*Ryland & Son* and *Hayden*, for defendant in error.

I. Did the court below give proper instructions in behalf of the plaintiff?

II. Did the court refuse to give proper instructions asked by the defendant?

To the first question we answer affirmatively. The issue was whether the note was the defendant's or not; and the instructions given for plaintiff, and the first instruction for defendant fairly put the law of the case, under this issue, to the jury, and fairly left the issue to them for their finding. That these instructions are proper, see case of Dow's Ex'r v. Spenny's Ex'r et al., 29 Mo. 386 ; Fitzpatrick v. School Commissioners, 7 Humph. 224.

The fourth and fifth instructions were properly refused. There were no propositions to compromise in evidence ; no offer to compromise. The sending the one note to plaintiff to pay off another note, or to exchange for another note, was a fact capable of proof and proper to be proved. The principle of law concerning admissions of parties made to effect or procure a compromise, which rejects admissions so made, is not involved in this case.   (Murray v. Coster, 4 Cow. 635 ; Hartford Bridge Co. v. Granger, 4 Conn. 142; Cow. & Hill's Notes to Phil. Ev., part I., pp. 220–222, note 196 ; 20 Johns. 576 ; 1 Greenl., § 192.)

BAY, Judge, delivered the opinion of the court.

This was a suit on a negotiable promissory note for the sum of one thousand dollars, bearing date August 4, 1857, alleged to have been executed by the defendant to the plaintiff.

The defendant in his answer denies having executed the note, and denies that the note is his act.   No other issue is made by the pleadings.

The cause was tried by a jury, and judgment was given for the plaintiff for the amount of the note, with interest. Defendant in due time filed his motion for a new trial, which being overruled, he brings the cause into this court by writ of error.

Upon the trial, no exceptions were taken to the evidence, and the questions of law presented for our consideration arise upon the instructions given and refused.   In reviewing the action of the court below, with reference to those instructions,

it is necessary to keep in view the evidence given, which is as follows:

"1. Christopher B. Combs, who testified that in the month of October, A. D. 1857, he had a promissory note, payable to himself, with the name of one William W. Norris and the defendant Taylor to it as promissors; that in said month of October, 1857, and during the agricultural fair then being held near Boonville, in Cooper county, witness heard it rumored that the said William W. Norris had been forging the names of various persons to promissory notes; that his suspicions were aroused in regard to the genuineness of the signature of the defendant Taylor to the note held by witness, and that he presented said note to the defendant, for the purpose of ascertaining whether his signature to the same was genuine or not, on the fair grounds, at the time above stated. Defendant took the note and examined it, and said — 'If the signature to the note is not mine, it looks very much like it.' Then witness said, 'Mr. Taylor, will you pay it?' Whereupon the defendant Taylor said he wanted to see Norris first. Defendant went to see Norris; returned, and stated to witness that he would see the note paid, and afterwards defendant paid said note to witness. When witness presented the note to defendant as above stated, witness saw from the countenance of defendant that something was wrong. Witness, in the conversation alluded to, told defendant that he must settle the question, as to the genuineness of his signature to the note, at that time and on the fair grounds.' It was then that the defendant went and saw Norris, and came back and told witness that he would see the note paid, and did afterwards pay it. In said month of October, 1857, and two or three weeks after the conversation above detailed—the defendant and witness, and A. W. Simpson and other persons, being present in the city of Boonville, on the pavement near Anet's corner—defendant in a conversation stated to witness and the other persons present that he had said to the plaintiff Ferry, on the fair grounds, in said month of October, when Ferry presented to him (said defendant Taylor) the said note sued

on, about the same in substance that he had stated to witness in reference to the note presented to defendant by witness, in the first conversation referred to, which was, that if his (defendant's) signature to Ferry's note was not genuine, it looked very much like it.  Defendant said to witness that he (defendant) was afraid that what he had said to the plaintiff Ferry, on the fair grounds, had misled him or made him easy, or had led the plaintiff Ferry to believe that he (defendant) would assume the note of plaintiff; that if witness had understood when he (witness) presented his note to defendant that defendant would assume it, he would have put his note in his pocket and acted as the plaintiff Ferry did.  In the conversation referred to in the street, the defendant said the note was a forgery.  Norris at that time had left the country.

"George C. Hart testified that after the fair, and some time in the fall of 1857, he was of the impression that he brought a message from the defendant to the plaintiff, but could not recollect what it was.

"Dr. Pendleton testified, that in conversation with defendant after the fair, in the fall of 1857, that defendant said that he, plaintiff, would lose nothing; that the Norris store would pay him.

"A. W. Simpson testified, that after the fair in the fall of 1857, in a conversation had between witness and defendant, the defendant said that he had stated to the plaintiff, on the fair grounds, at the time plaintiff presented his note to him, (defendant) that he (defendant) supposed the note to be all right, and very much regretted that he had led the plaintiff to believe that he intended to pay the note, and was sorry that any misunderstanding had arisen between him and plaintiff in regard to the matter.

"Washington Adams, who was introduced as a witness, stated that in his law office, in the fall of 1857, and after the fair in October, a conversation took place between the plaintiff and the defendant in reference to the note sued on, and in the course of the conversation the plaintiff and defendant became somewhat excited and angry.

" The plaintiff's counsel put the following interrogatories to this witness:

" First. Did not plaintiff, at the time above referred to, ask the defendant why he had not told plaintiff that his (defendant's) signature was a forgery, when the note was presented to him on the fair grounds by plaintiff? and did not the defendant say to plaintiff, ' Now, General Ferry, if you had had a right-hand man, as Walker Norris has been to me, in the same fix he was at the time you presented the note to me, would you have exposed him under the circumstances ?'

" Witness stated that he had no doubt that the plaintiff asked the defendant the above question, and that the defendant replied to the question as stated by General Ferry, but that he did not recollect. Their conversation was excited, and he could not recollect all that was said by either.

" Second. Did not plaintiff, in the conversation above referred to, ask the defendant why he, defendant, had not returned to see plaintiff after their conversation on the fair grounds, after he had promised to see Norris and return and let plaintiff know the result of his interview with Norris in reference to the note sued on ? and did not the defendant, in reply to this question, say that when he found Norris, Norris told him that he (Norris) had the means to take up Ferry's note ; and that if he (defendant) would only pacify Combs, and keep Combs quiet, he (Norris) would go straight and take up Ferry's note ?

" Witness stated that it was very probable that the above conversation occurred as stated, and in fact said, 'I have no doubt but that it did occur as stated, if General Ferry said so, but that he did not recollect and could not say.' Witness stated that during the week of the fair, in October, 1857, Norris made several deeds of trust for the benefit of his creditors, among the number of whom was the defendant Taylor ; that, by the second deed of trust, Norris embraced in it a note executed to the defendant about the date of the deed of trust, for the sum of one thousand and ten dollars, bearing interest from date at ten per cent. per annum ; and,

after the conversation had in the office of witness between the plaintiff and defendant as above stated, about two or three weeks afterwards, the defendant Taylor requested witness to take the note of one thousand and ten dollars, secured by the second deed of trust, and offer it to the plaintiff in settlement of the note sued on. Witness, as requested by defendant, called on the plaintiff and offered said note to him in settlement of the note sued on. The witness stated that he advised plaintiff to first examine the deed of assignment before he accepted the note; that the plaintiff took time to examine said deed of trust to see whether the property conveyed in and by the first deed of trust would be sufficient to pay more than the liabilities mentioned in that deed, and, having made the examination, and being satisfied that the property conveyed would not reach the debts embraced within the second deed, he (plaintiff) declined to accept said thousand and ten dollar note in satisfaction of the note sued on, and gave up to witness, for defendant, the note sued on. Such was the substance of the reason given by the plaintiff for not taking the note. The deed of assignment was declared void, and nothing was made on the note.

"Defendant then introduced as witnesses, B. C. Clark, Isaac Lionberger, Samuel Mohan, and H. R. Walker, who were all sworn, and stated, in substance, that they were acquainted with the writing of defendant, and that the name of the defendant on the note was not his signature."

The court then gave, at the instance of the plaintiff, the following instructions:.

"1. If the jury believe from the evidence that the defendant Taylor signed the noted sued on, then they must find for plaintiff the amount due on said note, and interest.

"2. The answer and affidavit of defendant Taylor are no evidence that he did not sign the note sued on.

"3. Even though the name of the defendant John Taylor may have been signed to the note by some other person, yet if the jury believe from the evidence that he authorized the

signing of it, or ratified or adopted it after it was signed, then the jury must find for plaintiff.

" 6. It is not necessary to render a person liable on a note that he should have actually signed it with his own hand; but he may become bound by authorizing the signing, or by ratifying or adopting it after it is signed by another, although such other person may not have had any previous authority, and although the signature may have been forged."

The defendant then moved the court to instruct the jury as follows:

" 1. It devolves upon the plaintiff to prove to the satisfaction of the jury, that the defendant executed the note sued upon, or adopted it as his note, after his name had been forged to the same.

" 2. There is no evidence before the jury that the defendant signed the note sued upon; and unless the jury believe from the evidence that the defendant adopted the same by assuming it as his note, then they must find for the defendant.

" 3. Although the plaintiff may have understood the defendant as having adopted the note, or as having assumed its payment, yet, if in point of fact the defendant did not so adopt or assume its payment, the jury must find for the defendant.

" 4. If Taylor denied that the note was his, or that he had assumed the payment of it, any proposition made to substitute any other note in place of this, or to take up the note sued on by another note, if made by way of compromise, is not a proper subject for the consideration of the jury.

" 5. The jury are instructed to exclude from their consideration the offer of compromise made by defendant to plaintiff, through the witness Adams, and which was rejected by plaintiff."

The court gave the first, and refused instructions numbered 2, 3, 4 and 5.

It is contended by the plaintiff in error that the court below erred in refusing to give the second instruction asked by him. This instruction assumes that there was no evidence tending to prove that the defendant executed the note in con-

troversy, and upon the truth or falsity of such assumption depends the propriety of the ruling of the court.

The evidence discloses the fact that Ferry, entertaining some doubt of the genuineness of Taylor's signature, called upon Taylor, presented him the note, and asked him if his signature was genuine. Taylor replied, " If it is not my signature, it is very much like it." This, though not conclusive, is certainly evidence tending to show it was the note of the defendant. Not one person in a thousand would have drawn any other inference. Its effect was to quiet any apprehension that Ferry may have had in regard to the safety of his debt. We are to presume that Taylor knew if he had given a note for so large an amount, and if the note was a forgery he would have so stated when Ferry called upon him. His declaration therefore to Ferry, that if it was " not his signature, it was very much like it," was an admission bearing upon the issue, and which the jury had a right to consider.

The fact also, as testified to by Adams, that Taylor offered Ferry, in settlement of this note, a note which he held on Norris for about the same amount, and supposed to be secured by deed of trust, also tended to show that the note sued on was the note of defendant. The instruction, therefore, was properly refused.

It is further contended by the plaintiff in error that the court erred in refusing the fourth and fifth instructions. We, however, think otherwise. Both instructions were framed and asked upon the theory that the offer to settle the note by substituting the note of Norris was a mere offer of compromise, and therefore no evidence relating thereto was admissible. In our judgment, the evidence does not disclose an offer to compromise. The rule of law is that all confidential overtures of pacification, or other propositions between litigating parties, stated to be made without prejudice, are excluded on grounds of public policy; and the reason of the rule is that, unless so excluded, it would be difficult to take any step towards an amicable compromise or adjustment. (1 Greenl. 192.)

22—VOL. XXXIII.

So, if A being sued for one thousand dollars offers one hundred dollars, this is not admissible in evidence, because it neither admits nor ascertains any debt, but is a mere offer to buy peace, and get rid of the action by the payment of a small sum.

When an offer is made without prejudice, and with a view to an amicable adjustment of pending difficulties and under the faith of a pending treaty, and such offer is refused, the law will not permit any advantage to be taken of it. But this is not the case between the parties to this suit. The offer to settle the note sued on, by transferring to plaintiff the note of Norris of about equal amount, was made some time before the institution of this suit, and was a mere proposition to take up the note by the transfer of another.

An offer to pay a debt in property instead of money is, in no sense, an offer of compromise. The court, therefore, committed no error in refusing the instruction.

We are of opinion, however, that error was committed in giving the third and sixth instructions asked by plaintiff.

The doctrine of ratification has no application to a case of this kind, for, when invoked here, it presupposes the existence of an agency—that Norris was the agent of Taylor—that as such agent he committed in the name of his principal an unauthorized act which was subsequently ratified by the principal, and by virtue of which ratification the act became the act of the principal. Now, in this case, there is no evidence tending to show that Norris was the agent of Taylor for any purpose whatever, or had ever acted as his agent in any transaction whatever. The third and sixth instructions therefore tended to mislead the jury, and should not have been given.

If the jury had found for the plaintiff upon the theory that the defendant executed the note, or authorized any person to affix his name to it, then we should not disturb the verdict, for the evidence would have warranted such a finding; but if it was upon the theory that the note was a forgery, and that the defendant ratified or adopted it to shield Norris from

the consequences of the act, the finding was erroneous. We, of course, cannot say which theory was adopted by the jury, and as it is possible that they may have been misled by plaintiff's third and sixth instructions, the judgment will be reversed and the cause remanded. The other judges concur.