| | |
|---|---|
| 84 | 13 |
| 38a | 656 |
| 84 | 13 |
| 40a | 171 |
| 84 | 13 |
| 104 | 211 |
| 84 | 13 |
| 109 | 51 |
| 84 | 13 |
| 55a | 672 |
| 84 | 13 |
| 60a | 306 |
| 84 | 13 |
| 135 | 608 |
| 84 | 13 |
| 75a | 592 |
| 84 | 13 |
| 80a | 388 |
| | 80a 416 |
| 84 | 13 |
| 159 | 653 |
| 84 | 13 |
| 166 | 119 |
| 84 | 13 |
| 96a | 4 641 |
| 97a | 4 27 |

HAMMERSLOUGH, *Appellant*, v. CHEATHAM *et al.*

1. **Deed, Delivery of.** Delivery is essential to the complete execution of a deed; if not delivered it is of no more effect than if not signed.

2. ———: ATTORNEY AT LAW AND CLIENT. The mere relation of attorney at law and client does not authorize the former to deliver a deed made by the latter as a security on a loan nor does it give him the right to receive the money thereon.

3. ———: PLACING IN HANDS OF A THIRD PERSON. To constitute a delivery of a deed by placing it in the hands of a third person, it must be done with the intent on the part of the grantor that it shall take effect as his deed in favor of the grantee. It must be so held by the third party as to be beyond the control and right of dominion of the grantor.

4. **Pleading :** ESTOPPEL IN PAIS. An estoppel *in pais* must be pleaded by the party seeking to avail himself of it.

5. **Notice.** One who takes a note, secured by deed of trust, from the grantee, with notice that there had been no legal delivery of the deed to such grantee, is in no better position than the latter.

6. **Practice :** DENIAL OF INSTRUMENT UNDER OATH : STATUTE. R. S., sec. 3653, relating to the denial under oath of an instrument of writing which is the foundation of a pleading of the opposite party

(13)

in a cause, applies only to the manual signing of the instrument and not to its actual delivery.

7. **Agency : RATIFICATION.** One cannot be held to have ratified the unauthorized acts of another as his agent where there was no agency.

*Appeal from Jackson Circuit Court.*—HON. S. H. WOODSON, Judge.

AFFIRMED.

*Cook & Gossett* for appellant.

If defendant, Mrs. Cheatham, executed the deed of trust charged in the petition, to secure the note therein described, she could not afterwards buy in a title outstanding at the time the deed of trust was given, and hold the land by such title against a purchaser under the deed of trust. This is upon the plainest principle of equity. Having pledged the land, as owner, as security for a debt, she is estopped from asserting an adverse title, independent of any statutory provision or the effect of any covenants in her deed. *Bogy v. Shoab*, 13 Mo. 379 ; *Williams v. Nisley*, 2 Serg. & Rawle 515 ; 12 Mo. 174. But this is also covered by the statute. R. S., sec. 3940 ; G. S. 1865, 442, sec. 3 ; *Alexander v. Schriber*, 13 Mo. 271. The estate which this deed of trust purported to convey to the trustee, was an indefeasible estate in fee simple. The fact that upon payment of the note the estate would revert to the grantor, in no way affected the quality of the estate granted. And the effect of the covenants implied in the granting words, was to estop the grantor from setting up an adverse title. R. S., sec. 675 ; G. S. 444, § 8 ; *Collier v. Gamble*, 10 Mo. 467; *Norfleet v. Russell*, 64 Mo. 176 ; *Maguire v. Riggins*, 44 Mo. 412 ; *Dickson v. Desire*, 23 Mo. 151; *Chambers v. Smith*, 23 Mo. 174. The deed of trust was a valid conveyance binding on Mrs. Cheatham. The finding of the lower court is not

merely against the overwhelming weight of the evidence, but as to the most important findings in the case there is absolutely no evidence to sustain them. This court is not concluded in an equity case by the finding of the trial court as to facts. 16 Mo. 455; 48 Mo. 44; 47 Mo. 322. Even though it be true that the note and deed of trust were printed blanks when signed by her, yet she entrusted them to Crandall to fill up over her signature, and the fact that they were in blank did not affect their validity when completed. *Field v. Slagg*, 52 Mo. 534. It is a familiar principle that one who puts it into the power of another to practice a fraud must bear the loss. *Rice v. Groffman*, 56 Mo.; 61 Mo. 586. The evidence shows a clear ratification by Mrs. Summers of the delivery of the deed of trust by her agent. The court erred in its ruling admitting testimony for the defendant. The execution of the deed of trust, not being denied under oath, was admitted. R. S., 1879, sec. 3653. The answer of Hammerslough in the Wyandotte case was inadmissible.

Respondents filed no brief.

PHILIPS, C.—This is a suit in equity to set aside a certain deed held by the defendant, Susan, to certain lands in Jackson county, and to vest whatever title she holds thereunder in the plaintiff. The history of this controversy is substantially as follows: In May, 1872, Susan A. Summers, a widow, owned the land in controversy. She had acquired it under deed from one E. P. West. In the month aforesaid one Elijah E. Kellogg, of Ann Arbor, Michigan, came to Kansas City to loan some money. He met one J. J. Crandall, a practicing lawyer of that city, with whom he soon struck up an acquaintance, Crandall representing to him that he was a native of the state of Michigan. On making his business known to Crandall the latter informed him that he had a client, Mrs. Summers, the defendant, who desired to borrow. Crandall saw Mrs. Summers, at whose house he

was then boarding, and informed her about this money. He stated to her that the amount was about $1800. She did not want so much; $400, she said, was as much as she required ; but finally consented to take it all and pay fif: teen per cent. interest therefor. Crandall brought up a blank deed of trust and a blank note for her to sign, which she did, Crandall stating that he.had not time to fill up the same then, or something to that effect, took the same away with him. Mrs. Summers claims that she never acknowledged the deed ; but Crandall, who was a notary public, after going to his office filled up the blanks and wrote out the 'acknowledgment in the presence of Kellogg. · Crandall, so states the defendant, was to return with Kellogg, or bring him around when the negotiations were completed, and consummate the transaction by paying over to Mrs. Summers the money.

On examination of the abstract of title to the land of Mrs. Summers, which land was to be given as security for the loan, some .defect was discovered, which delayed the conclusion of the contract. On the return that evening of Crandall to Mrs. Summers' residence he stated to her that the negotiations ·had fallen through; she says that was the last she heard of the matter. The land having been bought by Mrs. Summers from said West, he was applied to to correct the alleged defect. West, to make the matter satisfactory, signed the note as surety for Mrs. Summers, at Crandall's suggestion, and gave a deed of trust as collateral security, on a tract of land owned by him in Wyandotte county, Kansas. Thereupon Kellogg made the loan, paying the money over to Crandall, and Crandall delivering to him the note and deed of trust from Mrs. Summers. After this, Crandall stated to Kellogg that he would like to have him credit the note of Mrs. Summers with $600, and let him have that sum of the money so loaned, as there was more than Mrs. Summers wanted. This, Kellogg did, taking from Crandall a deed of trust on land owned by him to secure the $600. Crandall paid over no part of this money to Mrs. Summers, nor did she learn until long afterward

that Crandall had effected the loan and delivered over her note and deed. When she discovered this fact she demanded that he take her deed from record. There seems to have been an attempt between her and Crandall to adjust the matter by submitting the controversy to arbitration. But, Crandall failing to give bond as required by Mrs. Summers' counsel, the arbitration failed. On the maturity of the note so held by Kellogg, he placed the same in the hands of F. M. Black, an attorney at law of Kansas City, to foreclose the deed of trust. The land was accordingly sold under the trust deed, and Black bought the same in for his client. West, in the meantime, sold the Wyandotte land to the plaintiff, subject to the mortgage given as aforesaid by West to Kellogg. Kellogg then began proceedings to foreclose his said mortgage on the Wyandotte lands, making West, Hammerslough, the plaintiff herein, and Mrs. Summers parties defendant. Mrs. Summers, however, was never notified of the pendency of said suit, nor did she appear thereto. The suit as to her was dismissed.

To this last suit Hammerslough appeared, and, in his answer, set up in defence the facts hereinbefore detailed in respect of the manner of obtaining the deed and note from Mrs. Summers ; and, in an affidavit for a continuance, set out the same facts, asking for a continuance on account of the absence of Mrs. Summers, by whom he expected to prove the said matters pleaded in the answer. Kellogg prevailed in the suit, and during the pendency of said action on appeal in the Supreme Court, Hammerslough, meeting with a favorable opportunity, made sale of said land in Kansas, and paid off the judgment of Kellogg. In the trade thus made, he took from Kellogg an assignment of the note held by him as aforesaid on Mrs. Summers, (only a small portion of which seems to have been satisfied by the foreclosure sale at which Black purchased). Black thereupon made to Hammerslough a deed of quit-claim to the Summers land. The land em-

braced in the Summers deed of trust was subject to a deed of trust placed upon it by West before he conveyed to Mrs. Summers. This deed of trust was foreclosed, and at the sale one H. L. Glover became the purchaser, but with the money and for the use of Mrs. Summers. In a suit in equity by Mrs. Summers against Glover the title of Glover was divested and vested in Mrs. Summers. Since the transactions aforesaid Mrs. Summers has intermarried with the co-defendant, Cheatham.

The plaintiff, Hammerslough, brought the pending suit against Mrs. Cheatham and husband, setting up, substantially, the facts touching the conveyances and foreclosure sales and purchases aforesaid, omitting, of course, the facts relative to the manner in which the deed was obtained from Mrs. Summers, and claiming that he was an innocent purchaser for value. The petition alleges that the deed of trust made by Mrs. Summers contained the words "*grant, bargain* and *sell,*" implying the covenants which the statute attaches to the employment of such words in deeds of conveyance. It alleges that she is estopped by her said covenant from claiming the land under her said purchase under the West trust deed against the plaintiff, as purchaser under her trust deed to Kellogg. The prayer of the petition is to divest her legal title thus acquired and to vest the same in plaintiff.

The answer of defendants set up the facts relative to the manner in which her deed to Kellogg was obtained, alleging that the same was not executed or delivered by her, and asking for the divestiture of the title acquired by plaintiff to said land, etc. The court found the issues for the defendants, and rendered judgment as prayed in the answer. The plaintiff has brought the case here by appeal.

I. Several questions have been discussed by counsel for appellant. The respondents have filed no brief. The controlling question presented for determination in this record is, was the deed of trust from Mrs. Summers to

Kellogg ever delivered by her. If it was not delivered by her it is of no more effect than if she had not signed it. Delivery is the crowning act in the complete execution of such instruments. 3 Wash. on Real Prop., 282, 283; *Huey v. Huey*, 65 Mo. 689. There is no pretense that Mrs. Summers delivered the deed to Kellogg in person. To establish a delivery, therefore, the plaintiff must maintain that the delivery by Crandall was effectual to bind her. What was the relation of Crandall to the contracting parties? It will not do for the plaintiff to assert that he was the agent of Kellogg. That would be fatal to his case. For, if Crandall was acting as Kellogg's agent, the unquestioned fraud of the former would be the fraud of the latter. *Qui facit per alium, facit per se.* At least the principal could not avail himself of the fruits of the fraud of his agent without ratifying the act. Story on Agency, 139, 140; *Jefferson City Sav. Ass'n v. Morrison*, 48 Mo. 273. The delivery of the deed to Crandall cannot, therefore, be held to be a delivery to Kellogg. Nor can it be successfully maintained that, as between Mrs. Summers and Crandall, he was her agent; and that the transaction in question came within the terms of the general agency. Until the general agency of Crandall was established no declarations or acts of his, in negotiating with Kellogg, were admissible to bind the principal.

Looking at the testimony of Kellogg alone it did not justify him in concluding, if he did so conclude, that Crandall had any general authority from Mrs. Summers to act for her in the transaction of the business under review. Crandall, who was a lawyer, and so known to Kellogg, merely informed him that he had a client desirous of borrowing some money. The well understood relation of attorney at law and client pertains to matters in litigation, or to the giving of advice and counsel touching legal questions. He is not an attorney in fact, but one at law. All that Kellogg could legitimately infer from Crandall's announcement was, that he had

learned from his client that she wished to borrow some money, and that he would communicate and advise with her in the premises. The law did not affix to his office of attorney at law the delivery of deeds made by his client executed as security on loans, nor the right to receive money thereon. Story on Agency, 24 and note 127; *Railroad v. Stephens*, 36 Mo. 153; 1 Parsons on Cont. 17. Accepting unchallenged Kellogg's evidence, he was put upon his guard and inquiry as to the nature and extent of Crandall's authority, that it was a limited agency at most. He, therefore, dealt with him at his peril. As between Mrs. Summers and Crandall, he can scarcely be regarded as an agent for any purpose, outside of the office of a scrivener to fill up the blanks in the deed and note, and the preparation of the abstract of title. It is fair and reasonable, doubtless, to infer against her, from the attendant circumstances, that she authorized him to fill out the deed and note. His act would bind her to that extent. *Field v. Stagg*, 52 Mo. 534.

The deed was not then acknowledged, and she testified that she never did acknowledge it. While the deed of a person, *sui juris* is good against him when signed by him without acknowledgment, yet the common acceptation is, that a deed is incomplete until acknowledged. So Wagner, J., in *Fountaine v. Boatman's Sav. Inst.*, 57 Mo. 561, declares: "A deed is not generally executed until it is acknowledged, and till that takes place there will be no presumption of delivery." The deed not being acknowledged when she handed the same to Crandall, there can be no presumption that she gave it to him to be delivered to Kellogg. Crandall was to bring Kellogg to Mrs. Summers to pay over the money; therefore, Crandall was not authorized to receive the money. And as Kellogg would not be entitled to the deed until the money was paid, the conclusion follows that the deed was not intrusted to Crandall for delivery. To constitute a delivery of the deed, by placing

it in the hands of a third party, it must be done with the intent, on the part of the grantor, that it should take effect as his deed in favor of the grantee. It must be so held by the third party as to be beyond the control and right of dominion of the grantor. 3 Wash. on Real Prop., 290 (4 ed.) ; 2 Greenl. Ev. 297 ; *Cook v. Brown*, 34 N. H. 460, 476 ; *Huey v. Huey*, 65 Mo. 689, 693, 694. Crediting the testimony of the defendant and her daughter, who are the only witnesses speaking to what occurred between Mrs. Summers and Crandall, it is clear, at no time while Crandall held the deed, was it beyond the power and right of Mrs. Summers to demand and reclaim it. He had no other possession of it than that of a scrivener to fill out the blanks. He had no right to hold it for one moment after its completion. He could, therefore, hardly be regarded as an agent. *C. W. & Z. Ry. Co. v. Iliff*, 13 Ohio St. 250.

II. It is urged, however, by appellant that Mrs. Summers, by her acts and conduct in this transaction, is estopped from claiming that the deed was not delivered and the money paid her. *Rice v. Groffman*, 56 Mo. 434. It is, we think, a sufficient answer to this to say, that no such issue is raised by the pleadings. It is the settled rule of this court that an estoppel *in pais* must be pleaded by the party seeking to avail himself of it. *Bray v. Marshall*, 75 Mo. 327 ; *Noble v. Blount*, 77 Mo. 235. The answer of defendant in this case pleaded that the deed in question was neither acknowledged nor delivered by Mrs. Summers, and was, therefore, a fraud. The reply tendered simply the general issue. And even if the issue were properly presented, there was very persuasive evidence in the case to warrant the finding of the court. The trial court saw and heard the witnesses, and we defer to its conclusion as to their credibility.

The truth manifests itself that Kellogg was over reliant in the integrity of Crandall, who seems to have ingratiated himself into Kellogg's confidence by claiming a common state nativity. While it may be unjust to

impute to Mr. Kellogg bad faith or fraudulent collusion with Crandall, his conduct is not free from criticism. After he had taken the deed and note of Mrs. Summers, without seeing or consulting her, and without any shadow of authority from her, on the bare suggestion of Crandall that it would oblige him, Kellogg entered a credit of $600 on the note given by Mrs. Summers, and let Crandall have that sum. How did he know whether Mrs. Summers would consent to this? By the terms of the then concluded contract, Mrs. Summers was entitled to the whole of the sum specified in the deed and note. Why should he assume she would be content with a part, or any arrangement he and Crandall might make? Was not the extraordinary liberty Crandall was thus taking with the affairs of his client calculated to put an honest and prudent man on his guard and inquiry? That Mrs. Summers got not a dollar of the money thus borrowed, is not remarkable after this free and easy demonstration between the lender and "go between."

III. The deed not having been delivered, Kellogg was not entitled to enforce it. The plaintiff is in no better condition. He is not only a purchaser by deed of quit-claim, but with notice of the facts at the time he took the note and deed from Kellogg.

IV. The point is made that the proof touching the non-delivery of the deed was inadmissible under the answer; because the answer was not sworn to, as in the plea of *non est factum*. Sec. 3653, R. S. 1879, applies only to the manual signing of the instrument, and not to the act of delivery. The answer expressly averred that the deed was never delivered.

V. It is finally urged by the appellant that the attempted arbitration between the defendant, Mrs. Summers, and Crandall, amounts to a ratification of the act of Crandall. If, in point of law and fact, Crandall was not an agent at all of Mrs. Summers, there could be no ratification of an act never authorized. *Ferry v. Taylor*, 33 Mo. 323. But aside from this, the proposed arbitration

was no admission of Crandall's authority in the premises, and was only an effort to have him account for the money received by him, which she could have compelled him to pay, if she desired. Of course, had the arbitration proceeded to award, or she had otherwise received and appropiated any part of the money, it would have amounted to a ratification, and precluded the defence here interposed. The judgment of the circuit court is affirmed. All concur.