THE CENTRAL NATIONAL BANK v. DORAN *et al.*, *Appellants.*

IN BANC.

1. **Fraudulent Conveyance:** FAILURE TO RECORD DEED OF TRUST. Where one indebted to a bank executes a deed of trust on his land with the understanding that it is to be withheld from record so as not to impair his credit, and another bank relying upon the *indicia* of solvency thus created extends the debtor's old notes and takes new ones, and advances him more money, such renewals and extensions will be deemed valuable considerations, and the deed will be regarded as constructively fraudulent as to them, although there may have not been any actual intent to defraud. [BARCLAY, J., *dissenting.*]

2. ———: SETTING ASIDE DEED. Although a judgment lien creditor may have the land of his debtor covered by a fraudulent deed of trust sold at an execution sale, and the deed of trust set aside, he has the right also to have the deed set aside without such sale.

3. **Pleading:** ESTOPPEL IN PAIS. An estoppel *in pais* to be available as a defense must be specially pleaded, even though the proceeding is an equitable one.

*Appeal from the Cooper Circuit Court.*—HON. E. L. EDWARDS, Judge

AFFIRMED.

*Cosgrove & Johnson* and *J. G. Chandler* for appellants.

(1) The deed of trust was valid as to Doran and his creditors, when it was given, and, unless the respondent has been injured by withholding it from the record, it cannot successfully attack its validity. The withholding the deed of trust from the record, and keeping its existence a secret, are not in themselves wrong. "It is only when they become a part of a policy whose design is evil that such measures fall under the censure of the law." *Walsh v. Chambers*, 13 Mo. App. 301; *Berry v. Ins. Co.*, 2 Johns. 606; Story's Equity Jurisprudence [12 Ed.] secs. 390, 391, 393. The English doctrine is stated, in cases of negligence in failing to record title papers, to be that a grantee "cannot lose such preference and be postponed, unless by himself, or by his agents, he is chargeable with fraud or with gross negligence—mere negligence will not do." 2 Pomeroy on Equity, sec. 732. (2) The respondent is only a "creditor at large" of Doran's. It has been the settled law of this state that the title of a *bona fide* purchaser or mortgagee under a deed or mortgage, not recorded, "is good against creditors at large." *Sappington v. Oeschli*, 49 Mo. 244, and cases cited; *Parks v. Bank*, 97 Mo. 130. (3) The burden was upon the respondent to prove that the failure to record the deed of trust at, or about, the time it was delivered was as to it fraudulent, and as fraud will not be presumed, when all the facts in the case consist as well with honesty and fair dealing as they do with the intention to defraud, and, as the preponderance of the evidence in the case at bar was entirely consistent with honest dealings and honorable business methods, the judgment of the lower court shall be reversed. It was error in the court below to presume fraud which was clearly

done in this case. *Henderson v. Henderson,* 55 Mo. 535; *Ames v. Gilmore,* 59 Mo. 537; *Rumbolds v. Parr,* 51 Mo. 592; *Ryan v. Young,* 79 Mo. 30. (4) The respondent is estopped by the agreement of March 20, 1887, from prosecuting the suit against Bartle. By the terms of said agreement it is provided that said Bartle shall not be liable for a greater sum than $5,000, it being the intention thereof that said Bartle shall make good to said bank one-half of any loss that it may sustain, provided, however, that in no event shall he be bound to pay more than $5,000. *State v. Potter,* 63 Mo. 226; *Quinlan v. Keiser,* 66 Mo. 603; *Galbreath v. Newton,* 30 Mo. App. 380; *Acton v. Dooley,* 74 Mo. 63; *Guffey v. O'Reiley,* 88 Mo. 418. (5) In the case at bar, Doran alone testified that it was agreed that the deed of trust was not to be recorded until he became of doubtful solvency. *Benne v. Schnecko,* 100 Mo. 250; *McElroy v. Maxwell,* 101 Mo. 294. (6) The fact that the deed of trust was not recorded, and that respondent became a creditor of Doran, relying upon his being the owner of unincumbered property, furnishes no ground for the support of this suit and decree. This was distinctly ruled by this court in *Parks v. Bank,* 97 Mo. 130; *Benson v. Maxwell,* 14 Atl. Rep. (Pa.) 161. Creditors are not within the recording acts, and are not entitled to complain of the failure to record a deed or mortgage. *Davis v. Ownby,* 14 Mo. 170.

*Walker & Johnson* and *Draffen & Williams* for respondent.

(1) A deed of trust or other incumbrance, which, by agreement, has been withheld from record in order that its existence may not be known, and the grantor's credit may not be impaired by reason of it, will be declared fraudulent at the suit of those induced to

extend credit to the grantor in reliance upon the apparently unincumbered title to the property covered by the incumbrance, and in ignorance of such secret lien. *Blennerhassett v. Sherman*, 105 U. S. 100; *Goldsby v. Johnson*, 82 Mo. 602; *Walsh v. Chambers*, 13 Mo. App. 301; *Hilderburn v. Brown*, 17 B. Mon. 779; *Bank v. Housman*, 6 Paige, 526; *Hilliard v. Cagle*, 46 Miss. 309; *Walton v. Bank*, 13 Colo. 265; *Steel v. Coon*, 43 N. W. Rep. 411; *Barker v. Barker's Assignee*, 2 Woods, 87; *Blackman v. Preston*, 12 W. Rep. (Ill.) 817; *Hildreth v. Sands*, 2 Johns. Ch. 35; *Coats v. Gerlock*, 44 Pa. St. 43; Wait on Fraudulent Conveyances [2 Ed.] sec. 235. (2) The plaintiff when this bill was filed was a judgment creditor of Doran, and its judgment was a lien upon these lands. Plaintiff had the right to maintain this action to declare the deed of trust fraudulent, and the lands subject to said judgment. Freeman on Executions [1 Ed.] sec. 430; *Cornell v. Railroad*, 22 Wis. 261; *Clarkson v. DePeyster*, 3 Paige Ch. 320; *Lionberger v. Baker*, 88 Mo. 447; *Bobb v. Woodward*, 50 Mo. 95; *Ryland v. Callison*, 54 Mo. 513; *Zoll v. Soper*, 75 Mo. 460; *Shaw v. Dwight*, 27 N. Y. 244. (3) There is no estoppel in this case. *First*. No such issue is tendered by the pleadings. An estoppel *in pais* must be pleaded. *Bray v. Marshall*, 75 Mo. 327; *Noble v. Blount*, 77 Mo. 235; *Hammerslough v. Cheatham*, 84 Mo. 13. *Second*. This court, even in an equity case, will not consider a defense alleged to be shown by the evidence, but which is not within the issues made and tendered by the answer. *Hammerslough v. Cheatham*, 84 Mo. 13; *Reed v. Bott*, 100 Mo. 62; *Crowe v. Peters*, 63 Mo. 429; *Newham v. Kenton*, 79 Mo. 382.

SHERWOOD, C. J.—The plaintiff, a judgment creditor of defendant Doran, instituted this proceeding in

equity to postpone to the lien of plaintiff's judgment the lien of a certain deed of trust on land lying in Cooper county, executed by Doran to the defendant Bartle, and to declare such deed fraudulent.   On hearing the evidence the court below entered a decree, as prayed by plaintiff, making the lien of the latter prior to that of the deed of trust.

Summarized, the facts upon which the decree is based are these:   Doran, in the year 1885, and long prior thereto, had been a large live-stock dealer, and the largest shipper of cattle and hogs in that section of the state.   He resided in Cooper county on a large farm, worth over $20,000, and also owned a considerable farm in Morgan county, as well as a large amount of personal property, which, with his landed estate, made his financial standing good in the vicinity of his business ventures.

The defendant Bartle was Doran's brother-in-law, resided in St. Louis, and to him Doran's shipments of live stock were usually made.

On December 22, 1885, Doran was indebted to the defendant, the State Bank of St. Louis, in the sum of $12,800, and Bartle was indorser.   Doran was in St. Louis at this time, and it was proposed to him in St. Louis about that time that he execute a note for $20,000 to Bartle, to cover the amount he then owed said bank and for future advances, Bartle to indorse the note to the defendant bank, and Doran to execute a deed of trust upon his Cooper county farm, and another upon his Morgan county land, to secure said note.   The defendant bank and Bartle knew that Doran was then an extensive trader, and that he intended to continue to carry on his business of buying and shipping stock.   Doran, who was called as a witness by the plaintiff, testified that he told Bartle and the president of the defendant bank that he was

unwilling to give the deeds of trust, if they were to be recorded, because to do so would impair his credit at home. He consented to execute them upon the distinct understanding and agreement, as he states, with both Bartle and the president of the bank, that they should be withheld from the record, so that his credit might not be impaired by reason of them; that, if there was any danger of trouble, or if he saw that there was any likelihood of their losing anything, or of his becoming insolvent, he would notify them in time to have the deeds put upon record. With this agreement he executed one deed of trust upon his farm in Cooper county, and another upon his Morgan county land, to secure the $20,000 note, which was drawn up, signed by Doran, indorsed by Bartle, and delivered to defendant bank on the twenty-third or twenty-fourth of December, 1885. After these deeds of trust, covering all of Doran's real estate, were executed to secure this note for $20,000, while his real indebtedness represented by said trust deeds was then only $12,800, they were laid aside unrecorded, and their existence was only known to Doran and the parties who held said secret liens. He then, with the knowledge of said parties, continued to carry on his business of buying and shipping stock as before, and the existence of said deeds of trust being unknown his credit was unimpaired.

Doran had been a customer of the Central National Bank, the plaintiff herein, for a number of years. At the time these deeds of trust were executed, that bank held notes which it had discounted for him. When these secret liens were created, he could have paid all of his debts. As the notes held by the plaintiff bank became due, the defendant Doran wanted to take them up by making new discounts, the new notes having longer time to run; and also wanted the bank to let him have more money. The officers of the bank, after

inquiry, learned that his land in Cooper county was unincumbered; he was in full credit, and upon the faith thereof, during the year 1886, while these deeds of trust were being withheld from record, so as not to impair his credit, the plaintiff let him have more money, and permitted him to make new discounts in lieu of his old notes. Said bank advanced him *more money*, and accepted renewal notes having longer time to run, and extended him the same accommodations as he had been accustomed to receive, the bank being in entire ignorance of said secret liens.

On the seventh of January, 1887, the deed of trust was recorded in Cooper county. It was not recorded until Doran's insolvency made it necessary, and rendered it useless longer to withhold it in order to strengthen his credit. This action was just as Doran testified that the contract provided it should be. The trust deed was sent to Cooper county by a special messenger, whose anxiety to get it upon the record caused him to have the recorder to permit him (the messenger) to record it himself the night of his arrival, and after the office had been closed for the day.

Doran left with the plaintiff, as collateral, some certificates of stock in the Doran Live Stock Company. The bank officers did not consider this stock worth anything when it was given to them, and the testimony in the record shows that it has no value now. After Doran's insolvency, Bartle did not want these certificates of stock sold, and he agreed that, if the bank would not sell them for two years, he would pay fifty per cent. of its loss, not to exceed $5,000, however; and, to secure himself, he took a deed of trust upon Doran's personal property. There was nothing whatever in this agreement to prevent the plaintiff from pursuing any other property of defendant Doran. It was simply an agreement not to sell the collateral for that length

of time, and did not interfere with any other right or remedy. When this arrangement was made, Doran's insolvency was known, and the deed of trust had been recorded, but the bank officers had no notice whatever of the secret arrangement to withhold said deeds of trust from record and to conceal their existence. Bartle afterwards sold the personal property of Doran under the deed of trust given to indemnify him, and $2,800 were realized. This was paid over to plaintiff to stand against that much of Bartle's $5,000 liability, and when this payment was made it was specially agreed that same should not be a waiver of any rights of any of the parties against each other. The two years for holding the certificate of stock had expired at the time of the trial, and it then had no value, and had none at the time this cause was heard in the court below.

The plaintiff bank sued Doran on the notes held by it. They were all of those given after the execution of the deeds of trust, and were based either on money loaned at the time or in renewal of old notes which had matured while the deeds of trust aforesaid were lying per due. The answers to the petition, which set forth the facts which are contained in the above statement, were in substance but mere denials of the allegations of the petition.

In the decree entitled in behalf of plaintiff the following among others were found as facts in the cause: "That after giving said deeds of trust he (Doran) continued to buy stock extensively, and to trade in Cooper and adjoining counties, and that this fact was well known to the defendants, Bartle and the State Savings Association; that at the time said deeds of trust were executed it was expressly agreed by the said Bartle that the same should be withdrawn from record, and the existence thereof should be concealed, so as not to injure or impair the credit of said defendant

Doran in the community where he was living and trading; that, before said note was transferred to the State Savings Association, the said State Savings Association had notice of said agreement to withhold said deeds of trust from record and conceal the execution thereof and consented thereto; that, in pursuance of said agreement and understanding, said deeds of trust were withheld from the record, and the existence thereof kept a secret; that, with the knowledge and consent of defendants, Bartle and the State Savings Association, defendant Doran continued to carry on his business in Cooper county; that the arrangement to withhold said deeds of trust from record gave said Doran a false and fictitious credit in the community.''

I.   The testimony of Doran as already set forth is clear and positive to the effect that a distinct agreement was entered into between Bartle and the president of the defendant bank and himself, that these deeds of trust were to be withheld from record so that Doran's credit should not be impaired by reason of their being recorded; but that if any danger of trouble should arise, or if any likelihood of any loss occurring in consequence of the incumbrances not being recorded, or of his becoming insolvent that then he would notify them to have the deeds recorded in time to save them.   This statement of Doran as to the secresy to be maintained regarding the deeds of trust is somewhat supported by Mrs. Doran who testifies that in April, 1886, Bartle, her brother, told her he had a deed of trust on the home place, but not to say anything about it.   This conversation of Bartle and his sister, he does not deny; he has no remembrance, etc.   The statement made by Doran is also borne out by the fact that Piggott, the trustee in the deed of trust, was not informed that he was trustee until after the deed was recorded.   Doran's statement is further supported by his own conduct and by the

conduct of Bartle and Parsons as well as by the circumstances of the time and manner of recording of the deed of trust on the tenth of January, 1887; Craig, a special messenger, employed by whom no one seems to know, but evidently by some one in the possession of the deed, and interested in its being put to registry, was sent to Boonville in hot haste, after Bartle had told Parsons, the president of the defendant bank, "it was time to record the deed," or words to that effect.

Craig recorded the deed after night with his own hand, and having done so returned to St. Louis the same night with the deed. The mere filing of the deed of trust for record would have been all-sufficient, as every business man knows; but something more tangible seems to have been desired by those who sent Craig to the recorder's office with, it would seem, pressing instructions. More than that, if the testimony of Doran is assumed to be true, the subsequently occurring events already related tally exactly with what Doran testifies the agreement he made about the non-recording of the deeds was.

It is true that Bartle and Parsons both deny that any such agreement was made; but in view of the facts already related, and of the further fact that the lower court had the advantage of the personal presence of the witnesses, we are not prepared to say that its conclusion was either incorrectly drawn or opposed by a preponderance of the testimony.

The authorities cited by the plaintiff bank fully bear out the position that in circumstances similar to those related a court of equity will postpone, or set aside as fraudulent, an instrument whose recording has been clandestinely delayed as aforesaid. And, apart from any agreement of the sort mentioned, some of the authorities hold that where a deed is concealed from

the public, at least for any considerable length of time, while the record-owner remains in possession, and is given a supposititious credit thereby, which results detrimentally to others who rely upon the outward *indicia* of solvency thus created, such deed will be declared constructively fraudulent, though no *actual* intent to defraud exists. *Hilliard v. Cagle*, 46 Miss. 309; *Hildeburn v. Brown*, 17 B. Mon. 779; *Bank v. Housman*, 6 Paige, 526; *Sukefort v. Lord*, 25 Pac. Rep. 497.

II.    No doubt is entertained that the plaintiff bank is fully within the protection of the principle already announced. Extensions were granted of the old notes, and new ones taken in their places. Such extensions were new credits to Doran; credits and extensions which the evidence clearly shows would not have been granted, but for the conduct of Bartle and the defendant bank, and thus Doran would have been compelled to have settled or to have secured the plaintiff, at a time when his indebtedness was far less, and when he was fully able to meet the demands of the plaintiff bank.

Touching this point and principle, the supreme court of Michigan is very clear in its enunciations: "On the fourteenth of March, 1885, a decree was made, and never appealed from, whereby the Rumsey mortgage was declared fraudulent and void as to creditors whose debts were contracted during the interval between the date and record of that mortgage, and a reference was ordered for proofs on that subject * * * Upon final hearing, the (lower) court allowed such a preference to a part of the claims for entirely new transactions, but rejected the preference as to all the rest. * * * We have no doubt, that under our statutes any creditors have a right to avoid an unrecorded mortgage, who have, during its absence from the record, done anything material, which may be fairly considered to have been done on the basis of its non-

existence. It is admitted that new credits given are acts of this kind: But so are, also, extensions of time on old debts for any definite period and renewal of notes or other obligations. Such renewals and extensions would be regarded as valuable considerations for new promises, and they would not be given by any prudent creditor if he knew his debtor was preferring some one else." *Root v. Harl*, 62 Mich. 420.

III. Nor is there any doubt as to plaintiff's right to pursue his present course in this matter. Having obtained a judgment it became thereby a judgment creditor with a lien on the lands in controversy, and, therefore, had a right to have removed the fraudulent lien of the concealed deed of trust.

Plaintiff could, doubtless, have caused a *fi. fa.* to have been issued and levied on the lands in litigation, bought them, and then had the deed of trust set aside; but this course would have resulted in needless sacrifice, and was not the only mode open to pursuit. Indeed, it may be said that plaintiff has chosen a course worthy of all commendation in this regard, and more free from obnoxious features than that usually pursued.

IV. Now as to the claim that the plaintiff is estopped by reason of the agreement heretofore recited, made between the plaintiff and Bartle. There are several answers for this contention.

In the first place, there was no such point made in the answer, and nothing is better settled as a rule of pleading than that an estoppel *in pais* must be pleaded in order that advantage may be taken of it on trial of the issues. Not only must the estoppel be pleaded, but this must be done with more certainty than is requisite, or will suffice in ordinary defenses. Bliss on Code Pleading [2 Ed.] sec. 364; *Noble v. Blount*, 77 Mo. 235; *Hammerslough v. Cheatham*, 84 Mo. 13.

Nor does it matter that this is an equity case instead

of one triable at law, since, in either case, no defense will be considered but which is embraced within the issues raised by the pleadings. *Hammerslough v. Cheatham, supra; Reed v. Bott,* 100 Mo. 62; *Newham v. Fenton,* 79 Mo. 382.

Furthermore, it is not thought that the agreement in question was intended to operate to prevent the present proceeding, or any other suitable method from being instituted, looking to a satisfaction of plaintiff's debt out of Doran's property. Moreover, the two years mentioned in the agreement had expired at the time this cause was heard. Doubtless, the object of the agreement was to prevent a sale of the stock certificates until such time as hopes, then perhaps entertained, might be realized by an appreciation in the value of that stock; but these hopes turned out to be vain, as already seen.

V. There is nothing in the point that the decree entered gives the plaintiff a lien for more than it is entitled to. The decree is only coextensive with the judgment rendered, and simply establishes the lien of the judgment as the paramount lien; that and nothing more.

Finding no error in the record we affirm the decree. All concur, but BARCLAY, J., who dissents.

SHERWOOD, C. J.—This case has been reargued before the entire bench with the result that the original opinion heretofore delivered before division number 1 is approved by a majority of this court. The judgment is, therefore, affirmed; BARCLAY, J., alone dissenting.