JOSEPH J. RUSSELL, Respondent, v. T. C. RUTHERFORD,. Defendant; JAMES L. BYRD, Interpleader, Appellant.

St. Louis Court of Appeals, May 22, 1894.

1. **Chattel Mortgages**: CONVEYANCE TO USE OF GRANTOR. A chattel mortgage is fraudulent as to the creditors of the mortgagor, if the mortgagee knowingly permits him to constantly remain in possession of the mortgaged chattels, sell the same in the usual course of trade and devote the proceeds to his own uses.

2. **Assignment**: EFFECT OF PRIOR FRAUDULENT MORTGAGES: SUBSEQUENT ATTACHMENT. The title of an assignee under a voluntary assignment is subject to a prior mortgage executed by the assignor; and when the mortgaged property is attached, after the assignment, by a creditor of the mortgagor on the theory that the mortgage is fraudulent, and, on being sold in the course of the attachment proceedings, realizes less than the amount of the mortgage, the assignee can not maintain an interplea for the proceeds.

*Appeal from the Mississippi Circuit Court.*—HON. H. C. RILEY, Judge.

AFFIRMED.

*Cantwell, Wilson, Boone & Moore* for appellant.

*Russell & Deal* for respondent.

BOND, J.—This is an action by attachment on a promissory note. The grounds alleged in the affidavit for the attachment are that "the defendant has fraudulently concealed, removed and disposed of his property and effects so as to hinder and delay his creditors," and "fraudulently conveyed and assigned his property and effects so as to hinder and delay his creditors."

The writ was levied upon fifteen hundred boxes of shoes in defendant's store, which were at the time of the levy in the possession of James Byrd. Byrd gave forthcoming bond and retained possession of the goods, and filed his interplea alleging that he was the owner and entitled to the possession of the property seized under the writ of attachment.

Plaintiff filed his answer to said interplea, admitting that said Byrd had possesssion of the goods claiming to hold them as assignee of defendant Rutherford at the time of the attachment, but denying that the interpleader was then or afterwards the owner of same, and denying that he had any right to the possession of the same or the proceeds thereof, and alleging further that the defendant in the attachment suit had executed certain mortgages prior to his assignment to said interpleader, which mortgages were fraudulent in fact and in law and embraced the same property, and further that the assignment to said interpleader was made subject to said fraudulent mortgages with full knowledge and consent of the interpleader, and was itself invalid and void. The interpleader filed a replication.

It appeared in evidence that defendant Rutherford executed a statutory deed of assignment to the interpleader on the twenty-second of May, 1893, conveying therein his stock of dry goods, clothing, notions, boots, shoes, hats, caps, etc., all "subject to a mortgage to J. H. Moore for $1,111.20, and to G. W. Mantell for $500."

It also appeared in evidence that, at the time of making this assignment for the benefit of his creditors, defendant was indebted in the sum of $6,500 or $7,000; that the mortgage to Mantell referred to in said assignment was made about two hours before the deed of assignment, and was recorded before the assignment; that

Mantell was defendant's father-in-law, and the mortgage in question was given to secure him as indorser on a $500 note due from defendant; that defendant also made a mortgage to the Dittman Shoe Company, on October 14, 1892, for $1,050 on the same stock of goods, and afterwards took up that mortgage and substituted a new one on April 13, 1893, for what was then due the mortgagee; that this latter mortgage was subsisting and unrecorded at the time of the assignment; that defendant executed to J. H. Moore a mortgage for $1,090, for money loaned, covering the same stock conveyed in the assignment.

This mortgage was recorded on the same day and a few hours before the making of the assignment. The defendant testified that, while the Dittman and Moore mortgages were existing, he held possession of his store and stock of goods and retailed the stock in the ordinary way, applying the proceeds to his living expenses and to the payment of the mortgagees and other creditors; that the debt secured by the mortgage to Moore was for money which had been borrowed by defendant some two years prior, when he and the interpleader were copartners. With reference to this mortgage defendant testified, to wit: "He (Moore) first got me to give him a lien on the stock; afterwards insisted on a mortgage. I told him I could not get out that way. He said he would not record it, that I owed him a good deal of money, which I did. He said nothing about what I was to do with the stock. I was to go on in business, I suppose he understood that; his place of business is in full view of mine, about fifty yards distant. He knew I was retailing the goods, was in the store occasionally."

There was evidence tending to prove that, on the day defendant made the assignment in question, he had a conversation with J. H. Moore, wherein Moore

told defendant that he "had just as well make this assignment, and they would help me as best they could." He said, "I still hold Jim Byrd responsible for this $1,500 note,·and I think you ought to help Jim out and assign your goods to him, and we'll help you out all right;" and that Moore said further: "If you will make the assignment to Jim, we will give you a salary and you can go ahead with the business. We will allow you $150 or $175 a month to run the business."

The jury returned a verdict for plaintiff and against the interpleader, who has appealed from a judgment rendered thereon to this court.

The title of the assignee in this case was subject to the rights of the mortgagees in the three mortgages outstanding at the time of the making of the assignment. *Moser v. Claes*, 23 Mo. App. 420; *Drew v. Drum*, 44 Mo. App. 25; *Riddle v. Norris*, 46 Mo. App. 512; *Jacobi v. Jacobi*, 101 Mo. 507; *Harris v. Harris' Adm'r*, 25 Mo. App. 496; *Heinrichs v. Woods*, 7 Mo. App. 236. The aggregate of these three mortgages exceeded the sum which the assignee received as the proceeds of the sale of the assigned estate. The record shows that none of the mortgagees have waived their lien upon the goods. There was, therefore, under this state of facts nothing in the hands of the assignee to be distributed among the unsecured creditors of his assignor.

The uncontroverted testimony of the defendant establishes the fact that he was permitted by the various mortgagees to remain in possession, from their execution until the date of the assignment, of all the property conveyed in these instruments; that he was constantly engaged in selling and retailing such property in the conduct of his business as a merchant; that he did not apply the proceeds of such sales to the

payment of the specific debts secured under said mortgages, but that he used such proceeds on his own account and in the payment of his living expenses and general indebtedness, and that these facts were necessarily known to the various mortgagees. They, therefore, constituted fraud in fact, and warranted the jury in finding the issues in favor of the attaching creditor. *Hisey v. Goodwin*, 90 Mo. 366; *Central National Bank v. Doran*, 109 Mo. 40.

We have examined the instructions given in this case, and do not think they contained any prejudicial error.

Our conclusion is that under the whole evidence the verdict was for the right party, and it will be affirmed. Judge ROMBAUER concurs. Judge BIGGS is absent.