Hitchcock, C. J.
In order to a correct. disposition of this case, it seems only to be necessary to ascertain the nature of the controversy, and the true state of facts upon which the judgment in the court of common pleas is based. These are disclosed in the bill of exceptions. It seems that in December, 1834, a bill of exchange was drawn by Gary Lewis upon Williams & Macy, of Buffalo, New York, which bill was indorsed by Matthew Acheson, Samuel H. Sutliff, Levi Sutliff, C. H. Wilcox, Ruel Miller, and Calvin G. Sutliff. This bill was for five thousand dollars, and was discounted by the Western Reserve Bank. Suit was subsequently commenced by the bank against Lewis, the drawer of the bill, and a judgment recovered for the sum of $5,462.34. A similar suit was commenced against the indorsers, and a joint judgment obtained against *4 them for the like amount. Miller claims that he has paid a part of the debt due to the bank, and that Acheson nas paid nothing, and the object of this suit is to compel contribution
There is no question but if one rf two or more sureties is compelled to pay the debt of his principal, he may call upon his co-sureties for contribution, and the plaintiff in the court below had a right to recover, provided he brought himself within this principle. What, then, are, in substance, the facts upon which he relied in the court below ?
On the 16th January, 1836, an execution was issued on the judgment of the bank against Lewis, placed in the hands of the sheriff, and levied upon a stock of goods as the property of Lewis, and these goods were subsequently sold, on this and other executions against Lewis, at the same time in the hands of the sheriff. Of the avails of that sale, $8,135.73 were ap plied on the judgment of the Western Reserve Bank.
Upon the face of this proceeding it would appear that the judgment was so far satisfied by a sale of the property of the principal debtor. But the fact is not so. Before the levy of the execution, Lewis had sold the goods to Daniel Gilbert. Before the levy was made, the sheriff, fearful of difficulty, took an indemnifying bond from Calvin G. Sutliff, Levi Sutliff, Wilcox and Miller, four of the indorsers, and these four, or a part of them, broke into the store, and directed the sheriff to levy on the goods.
An action of trespass was subsequently commenced by Gilbert against the sheriff, and the above named four indorsers, to recover damages for taking and carrying away the goods. The result of this action was a judgment against the defendants for $5,354.61 damages and costs. This last judgment has been paid and satisfied by the four indorsers who signed the indemnifying bond. And now Miller claims that, having paid one fourth part of this judgment in the action of trespass, he is to be placed in the same situation he would have been had he actually paid one-fourth part of the $3,135.73, which was made on the execution in favor of the bank against Lewis, the prim *5 eipal debtor. It is not claimed that he actually paid one-fourth part of this latter sum, but he has paid one-fourth part of the greater sum, which was recovered in the action of trespass for the identical goods which were sold to raise the lesser sum of $3,135.73.
Now, this is not the case where one joint trespasser is calling upon his co-trespasser for contribution. If it were, I presume no one would doubt that this suit must fail, for I take it no principle is better established than that such suit can not be maintained. But it is the case of a trespasser calling upon one no way concerned in the trespass, for contribution. The claim, it is true, is, not that this stranger to the trespass shall contribute to the full amount of the damages assessed for the wrongful act, but that he shall contribute his proportion of the amount for which the goods were sold.
To sustain this claim, the counsel for the defendant urge that when an action of trespass is prosecuted for taking and carrying away goods, and a recovery had by the plaintiff, the property in the goods is changed and becomes vested in the defendant. There is no doubt that, as a general rule, this is true. But did. the property of the goods in this ease, become the property of the defendants, in consequence of the judgment in trespass ? These goods had been sold at sheriff’s sale years before the judgment was rendered. The effect of the judgment might secure the purchasers at sheriff’s sale in their title to the goods, but it gave the defendants in the trespass case no title to them. It seems to be argued, however, that this judgment had a kind of retroactive operation, and vested the title in the defendants, as of the time when the trespass was committed, and establishes the fact that at that time the goods were, in law, the goods of the trespassers, so that the goods sold were not the goods' of Lewis or of Gilbert, but actually the goods of those who had wrongfully seized upon them. It seems to the court that this is a' novel principle of law.
Besides, although by a judgment in trespass, the goods taken and carried away become the goods of the defendant, yet if *6 there are two or more defendants, and the judgment is collected of one, he cannot call upon his associates, those who become jointly interested with him in the property by the judgment, for contribution. Much less'could he have contribution from one who had no part in the trespass.
Inasmuch, then, as the only right cf the defendant in error to recover, originated in a trespass by him committed, it seems to the court that his claim is without any good foundation, and that the court of common pleas erred in receiving the record of the case in trespass in evidence ;• in refusing to nonsuit the plaintiff below; and in refusing to grant a new trial.
Judgment reversed, with costs.