## NOBLE v. BLOUNT, *Appellant.*

1. **The Judgment** below is manifestly right on the undisputed facts as they appear in evidence.

2. **Instructions.** Although some one out of a number of instructions given may be faulty, yet where the conclusion reached by the jury is manifestly right and a different result could not have been reached without injustice, the verdict ought not, on this account, to be disturbed.

3. ———. To determine whether a judgment should be reversed for error in an instruction, it should be read in connection with the other instructions given in the case.

4. ———. A judgment will not be reversed for error in an instruction given by the court of its own motion, when one given at the instance of appellant contains the same error.

5. **Principal and Surety.** A surety cannot recover of his principal if he pays the debt with knowledge of facts which would discharge himself or his principal, or if, to shield himself against liability in another direction, he procures the surrender to himself of the obligation of his principal.

6. **Estoppel.** There can be no defense on the ground of estoppel where the defendant has neither acted nor altered his situation on account of what was said by the other party, nor unless the estoppel was pleaded.

7. **Ratification** must be pleaded.

*Appeal from Andrew Circuit Court.*—HON. H. S. KELLEY, Judge.

AFFIRMED.

*Booher, Heren & Son* for appellant.

*Strong & Mosman* for respondent.

PHILIPS, C.—This is an action by respondent, who was plaintiff below, against the appellant, who was defendant below, to recover for balance due on a promissory note executed to her by appellant. The answer admitted the allegations of the petition. The contention in the case is over the second count of the answer, in which the defend-

ant pleaded, in substance, that after making the note sued on he became surety for plaintiff on a note executed by them to one Samuel Dysart, for $400. The answer further alleged that defendant derived no benefit from the last named note; that on the 9th day of March, 1876, prior to the commencement of this action, "he was compelled to and did pay off and discharge said note on which he was surety," amounting to the sum of $643; that plaintiff knew before she sued he had so paid said note. Defendant asked that this sum be allowed him as a credit on the note sued on. To this new matter the plaintiff replied tendering the general issue. The only witnesses examined touching this issue were the plaintiff and defendant; and as the errors complained of and the conclusion arrived at by us can best be appreciated and comprehended by reference to their testimony, a statement of its essential features is necessary.

The defendant testified that he signed the Dysart note solely as surety for plaintiff, and was then ignorant of its consideration; that in January, 1876, as administrator of the estate of one Parrott, he had a settlement with Dysart; that "said estate and I took up said (Dysart) note;" that afterwards he mentioned this fact to plaintiff. At first she denied ever giving such a note, but on inspection admitted her signature to it. She said she was glad defendant had taken it up; it was the only way he would ever get anything out of Dysart. Or as interlined in the bill of exceptions, the plaintiff said, "I am glad of it, or it is a good thing you did it." On cross-examination he denied any knowledge that this note was given for the purpose of preventing any one from administering on Parrott's estate, though he admitted there was some unseemly haste on the part of a certain sister-in-law to administer, and that there was some feeling in the matter. The plaintiff was his sister-in-law; and it was desired that he should administer. He became administrator, and at the sale of the property of the estate he permitted Dysart to purchase

property without giving any security, although Dysart was insolvent. The probate court having held him responsible for this fund, he took up the Dysart note, made by him and plaintiff, in payment of the amount so paid over by him to said estate. He did not so take up this note at plaintiff's request. Dysart was his son-in-law.

Mrs. Noble testified in substance that she did not owe Dysart a cent. On the contrary he was indebted to her in large sums of money at the time Blount claimed to have taken up the note, and that Blount knew this fact at the time. The Dysart note was without consideration. The only inducement to its execution which she could suggest was that she and Blount being jointly interested in preventing the grant of letters of administration on the Parrott estate to their sister-in-law, it was stated by each of them that they "would rather than $200 she should not have letters," and they may have given the note to compass her defeat. Dysart was present. During the whole six years Dysart held this note he never mentioned it to her. She held claims against him which she asserted exceeded the note in controversy, and which Blount knew of, for he drew them up. She never requested Blount to pay the Dysart note. She protested to Blount against selling Dysart any property at the administrator's sale without security, as he was worthless.

Blount did not return to the witness-stand in rebuttal of any of this new matter. Nor did he introduce Dysart as a witness.

On this state of the pleadings and evidence, it is difficult to perceive how an intelligent and honest jury could 1. THE JUDGMENT. find other verdict than the one it did, for the plaintiff, on this issue. The form of the verdict indicates that at least the foreman was intelligent and apprehensive. In fact, under the pleadings and proofs had the jury not found this issue for the plaintiff it would have been the plain duty of the trial judge, on application, to have promptly set aside the verdict. On this issue the burden

clearly rested on the defendant to establish the relation of
principal and surety. On the face of the note they were both
principals *prima facie*. True, it was competent as between
themselves to establish by parol the relation the makers
sustained to each other. By defendant's failure to contra-
dict plaintiff's testimony as to the presence of Dysart when
the note was made, the presumption was that he was so
present; and as the law placed the burden on the defend-
ant, why did he not call Dysart, his son-in-law, or account
for his absence? Indeed, had it not been for the fact that
in law the promissory note itself imported a consideration,
when the defendant rested his case, the plaintiff could have
successfully demurred to his evidence; for his own evidence
disproved the allegation of his answer, that he " was com-
pelled to pay off said note in full." On the contrary, he
testified that he took it up solely to protect himself against
his improvidence in administering Parrott's estate. He
was scheming and speculating in fact to make his widowed
sister-in-law re-imburse him for a loss, impending on trust-
ing an impecunious son-in-law with assets of the estate
against the protestations of this very widow.

The evil disposition of this party is likewise mani-
fested from his answer, which further weakens the justice
of his appeal. He alleges that he paid this Dysart note
on the 9th day of March, 1876, and alleged that the prin-
cipal and interest aggregated then $643. The note only
bore six per cent interest, and on March 9th, 1876, would
have amounted to only $542.66. Nor does it anywhere
appear from his evidence how much Dysart owed Parrott's
estate, or how much he really allowed or paid to Dysart
on the surrender of the note. In fact, his testimony was
that " said estate and I took up the said note." How much
of it the " estate took up," and how much the defendant,
it was impossible for the jury to find. The measure of his
recovery from Mrs. Noble would have been the sum ac
tually paid with six per cent interest from the date of
payment.

We have been thus full in the presentation of the merits of this case, on the undisputed facts, in order to 2. INSTRUCTIONS. show that even conceding the errors complained of by appellant in the instructions given, the jury were not likely, if indeed they could have been, misled to appellant's injury ; for it must alike result from the positive provisions of our practice act, as from that spirit of conservatism in our courts that would not sacrifice the ends of justice upon the sharp edge of technicality, that although some one out of a number of instructions given may be faulty, yet where the conclusion reached by the jury is manifestly right, and a different result could not have been reached by them without injustice, the verdict ought not on this account to be disturbed. R. S., § 3569 ; *Blewett v. R. R. Co.,* 72 Mo. 583 ; *Mauerman v. Siemerts,* 71 Mo. 101 ; *State v. Hopper,* 71 Mo. 425. Of course regard must always be had in such conjunctures to the peculiarities of the case on trial.

The appellant complains most of the following instruction, given by the court of its own motion :

1. "As to the note mentioned in the second paragraph or count of the answer payable to Samuel Dysart, the execution of the note is admitted and it imports a consideration, and the parties making it are bound and held for its payment, unless it be shown by the evidence that the note was given without any consideration, or for an illegal consideration, and is, therefore, void, or not binding on the parties. If the jury believe from the evidence that this note was given without any consideration, or that it was given to Dysart for services rendered, or to be rendered actually or pretendedly, in preventing the appointment of any one as administrator of any estate, or in procuring any one to be appointed administrator of an estate, then such note is illegal and without a valid consideration and void ; and if the defendant knew the consideration of the note, or that it was without consideration at the time he signed it, or before he took it up, or if he

received it on a debt due from Dysart or otherwise after it was past due, you should find for the plaintiff as to that ground of defense, and not allow any credit to defendant on account of said note."

This instruction is inartistic and carelessly phrased. The words, " or if he received it on a debt due from Dysart or otherwise after it was past due," if designed by the court, or if it is apparent that they were calculated to induce the jury to believe they could find a verdict for the plaintiff on that isolated fact, were misleading. But the instruction must be taken in its entirety and construed in its combination. *McKeon v. Citizens R. R. Co.*, 43 Mo. 405; *Moore v. Mo. Pac. R'y Co.*, 73 Mo. 438. It must be read in connection with the fifth instruction given on behalf of defendant, which, for prudential reasons possibly, he has omitted in the presentation of the case in his statement.

At the defendant's request the court gave the following:

5. " If the jury believe from the evidence that plaintiff executed and delivered the note given to Dysart, as principal, and that defendant signed said note as her security, the giving and delivery of said note is *prima facie* evidence that said note was given for a valuable consideration. If the jury further believe from the evidence that after said note became due and payable the defendant took up said note for plaintiff, and after so doing gave the .plaintiff notice of such fact, and that plaintiff assented to and acquiesced in defendant's taking up said note and he then notified her of the fact, (if you find such notice,) and she failed to make any dissent or objection to the taking up of said note, the jury will find the said note and interest for defendant, and credit him with the same, unless you shall believe from preponderence of the evidence that said note was given without any valid consideration. Then, and in that case, you should find for

plaintiff on said note, as mentioned in an instruction in the handwriting of the court, marked one."

So far as the record presented to this court shows, instruction No. five was asked by the defendant. No exception to it was taken. It thus appears that the appellant, himself, had the jury instructed to find the issue for the plaintiff if they found the note was without consideration. As this instruction refers expressly to instruction No. one given by the court, it is manifest that what the court intended in the first instruction to tell the jury, and what the jury doubtless understood by it, was that if they found the fact to be that the note was without consideration, and defendant knew it when he paid it, or paid it after maturity, they should find for defendant. The defendant should not be heard to complain here that this first instruction virtually precluded from the consideration of the jury the rights of defendant as a mere surety, based on the credibility of his evidence, when he himself, in effect, told the jury they could find against him if the note was without consideration, notwithstanding the fact that he was a surety. The language of Napton, J., in *Davis v. Brown*, 67 Mo. 313, is quite pertinent: "Considering all the instructions together, we do not see how the jury could have been misled; and the verdict seems to show that they were not. It hardly lies in the mouth of the defendant to object here to a technical blunder which he waived on the trial by adopting the error." See to same purport *Leabo v. Goode*, 67 Mo. 126.

Had the defendant by his proof brought himself within the circle of protection, which the law throws around a

5. PRINCIPAL AND SURETY. surety, who in good faith discharges the debt of his principal, he would have been entitled to a declaration of law authorizing a recovery against the plaintiff perhaps, even though the note as between principal and payee was subject to a valid defense. Brandt on S. and G., §§ 82, 197. It is also equally clear that a surety who, with knowledge of facts which would discharge him

16—77

or his principal, yet pays the creditor, cannot recover this sum from his principal. Burge on Suretyship, 365; *Russel v. Failor*, 1 Ohio St. 330. And if to shield himself against a liability in another direction he procures his debtor to surrender to him the debt of the principal, the courts ought not to aid in an effort thus to counter on his principal. *McCrory v. Parks*, 18 Ohio St. 1.

In respect of the refusal of the court to instruct on the questions of ratification and estoppel, in my judgment, 6. ESTOPPEL.    there was no evidence in the case to justify such declarations of law. No estoppel can arise in such a case, as what was said by Mrs. Noble was after the alleged payment of the Dysart note by. Blount. He neither acted on nor altered his situation on account of her utterance. *Spurlock v. Sproule*, 72 Mo. 503. Nor was there any issue tendered in the pleadings to authorize such evidence or instructions. Estoppel *in pais* must be specially pleaded. *Bray v. Marshall*, 75 Mo. 327.

And if he relied on a ratification of an unauthorized act he should have counted on the subsequent promise. 7. RATIFICATION.    *Gwinn v. Simes*, 61 Mo. 339.

This judgment, in my opinion, on the whole record, is just and ought to be affirmed. The other commissioners concurring, the judgment is affirmed accordingly.