(Defiance County Common Pleas Court.)
June Term, 1897.

KEHNAST v. DAUM, ET AL.

---

*Action against joint parties resident in different counties—Jurisdiction—*

Where the allegations of the petition upon its face make a case in which all of the defendants are rightfully joined, and service is made on one or more in the county where the suit is brought, and on the others in another county, the question of the jurisdiction of the court over the persons of the defendants served in such other county must be determined from the allegations of the petition, and must be raised by answer.

*Sureties on general administration bond jointly liable with sureties on special bond in proceeding to sell real estate—*

Where an administrator on his appointment gives the bond required by statute for the faithful administration of his trust as a whole, and afterwards in a proceeding instituted by him to sell real estate of the deceased to pay debts, gives another bond as required by statute for the faithful discharge of his duties under such proceeding, such new bond does not take the place of the former general administration bond, but the sureties on the administration bond are jointly liable with the sureties on the bond under the proceeding to sell real es tate, for the faithful discharge of his duties in such proceeding in accounting for the proceeds of the sale, and an action can be maintained against all such co-sureties jointly.

---

HUBBARD, J.

The plaintiff brings this action to obtain contribution from his alleged co-sureties, on bonds of the defendant, Fred W. LeSeuer, as administrator of the estate of Thomas Dempsey, late of Henry county, Ohio, deceased. Service of summons, duly endorsed with the amount for which, with interest, judgment will be taken if the defendants fail to answer, has been had upon

the defendants, Kiser and LeSeuer, in this county; and service of like summons has been had upon the defendant,, Daum and Meyer, in the said county of Henry, where they reside. These last named defendants, who appear for that purpose only, have moved to quash the service of summons so made upon them, for want of jurisdiction in the court, to issue summons to an ther county, in this action. And upon this motion the case has been heard and submitted to the court. Two questions arise on this motion, which must be determined from the allegations of the petition, which must be taken as true, for the purpose of this action, under the rule laid down in Drea v. Carrington, 32 Ohio St., 595, that: "Where the allegations of the petition upon its face make a case in which all of the defendants are rightfully joined, and service is made on one or more in the county where the suit is brought, and on the others in another county, the question of the juris diction of the court over the persons of the defendants served in such other county, must be raised by answer," etc. These questions are, First—Does the petition show upon its face that the defendants, Daum and Meyer, as well as Kiser were co-sureties with the plaintiff, for the performance of the same duty by the defendant Le-Seuer?

Second—If so, does it further appear up-on the face of the petition that the defend-ants, Daum and Meyer, are rightfully joined as parties to this action, with both or either of the defendants who were served in this county? Or, in other words, can an action such as this be maintained against all of the co-sureties jointly, or can it be maintained against the principal and the co sureties, jointly?

Referring to the petition, therefore, we find that it alleges the appointment of the defendant LeSeuer, as administrator of the estate of Thomas Dempsey, deceased. by the probate court of Henry county, Ohio; the giving of an administration bond by the said LeSeuer, with the defendants, Daum and Meyer as sureties thereon, in the sum of $2.000. conditioned according to the law for the faithful performance of his said trust and appointment, and the approval thereof by said probate court: the making of an order for the sale of real estate of the de-cedent, in proceedings duly had by said ad-ministrator, in said probate court, for that purpose, and in which the said LeSeuer was ordered to. and did give an additional bond in conformity to the provisions of section 6151, Revised Statutes, and conditioned as therein provided, in the sum of $16,000, with the plaintiff and the defendant, Kiser, as sureties thereon; the recovery of a judgment in this court in favor of Henry Rohrs, administrator de bonis non of the estate of Thomas Dempsey, deceased, against the said Fred W. LeSeuer and William A. Kehnast and John B. Kiser upon said last mentioned bond, in the sum of $900, for moneys which came into the

possession of the said LeSeuer, as such ad-ministrator of the estate of Thomas Demp-sey, deceased, and which he failed to pay over to the said Rohrs, his successor in the administration of said estate, upon order of the probate court by which he was appointed; that the plaintiff, Kehnast, was compelled to, and did pay said judgment and the costs of said action, amounting to $932.-03, except the sum of $200, which is alleged to have been paid thereon by the said Le-Seuer; and that the said LeSeuer and the said Kiser are each residents of said county of Defiance, and wholly insolvent. And, up-on this state of facts, the plaintiff prays for a personal judgment against all of the de-fendants in this action, in the sum of $524.-30. with interest thereon from Dec. 12,1895.

From the averments of the petition, we are fully satisfied that the first question must be answered in the affirmative, and that it appears upon the face of the pe-petition that the defendants, Daum and Meyer, as well as the defendant, Kiser, were co-sureties with the plaintiff, and bound in common with him to answer for and make good the default of the defendant LeSeuer, for which the judgment, that plaintiff alleges he has been compelled to pay, was rendered.

There can be no doubt that this case is governed by the rule given in 4 Am. & Eng. Enc. of Law, pages 4 and 5, as follows: Sureties for the same principal and for the same engagement are entitled to contribu-tion, although bound by different instru-ments and at differet times."

And, as stated in Vol. 24 of the same work, page 813, as follows: "If sureties are bound for the debt or default of the same person in reference to the same trans-action, they are liable to contribute to each other, although they are bound by different instruments."

In this case. the original administration bond on which Daum and Meyer were sureties, was by law required to contain. and it is averred in the petition that it did in fact contain, among others, conditions making the said LeSeuer and his said sureties thereon. Daum and Meyer. liable to the amount therein named, for default of the said LeSeuer as such administrator, to administer according to law, all of the moneys, goods. chattels, rights and credits of said deceased. and the proceeds of all his real estate that may be sold for the pay-ment of his debts. which shall at any time come to the possession of said administrator or to the possession of any other person for him. and to pay any balance remaining in his hands upon the settlements of his ac-counts, to such persons as the court appoint-ing him or the law shall direct.

The second bond, by its terms and con ditions. made the said LeSeuer and his said sureties thereon, Kehnast and Kiser. liable to the amount therein named ,for default of the said LeSeuer as such administrator. to account for and pay over to the persons law. fully entitled thereto, all of the proceeds o

the real estate of the decedent so ordered to be sold. While the first bond was the general administration bond, and contained obligations on the part of the makers thereof which are not included in the second bond, and for which the makers of the second bond are not liable, their provisions, as to the proceeds of the sale of the decedent's real estate, which was sold under the said order of the probate court, are substantially identical.

The second bond was not a new bond, in the sense of being intended to take the place of the first bond, as to the proceeds of the real estate. The language of section 6151, under the provisions of which it was ordered to be, and was given, describes the bond to be given thereunder, as "an additional administration bond, to secure the further assets arising from the sale of the real estate." The word "additional" as so used in this connection. imports ex vi termini that the bond to be given under the provisions of said section is to be in addition to, and not in substitution of the original bond to any extent. And this construction is rendered more evidently correct. from the fact that it is left wholly discretionary with the probate court to require the giving of such additional administation bond or not to require it; the language being that the court may also require such bond to be given, before such sale, if it shall deem it necessary. That is, in effect, if the court shall be of the opinion that the original bond is not sufficient of itself, to secure the due accounting for and paying over the moneys coming into the hands of the administrator from all sources, including "the further assets arising from the sale of real estate."

There is nothing to warrant any claim that the giving of the "additional administration bond" provided for by this action, pursuant to the order of the probate court in which the estate is being administered, satisfies the condition of the original bond, or releases the sureties thereon from their obligation that the administrator shall administer according to law, the proceeds of all the real estate of the decedent, which shall at any time come into the possession of said administrator, or to the possession of any person for him, etc.

We suppose, no one will attempt to claim that the person or persons entitled thereto, might not sue and recover upon either bond, at his or their own election, for any moneys received by the administrator for the sale of his decedent's real estate, and which such administrator had not accounted for, and paid over to the person or persons entitled thereto. If Rohrs, the administrator de bonis non, was entitled to recover from the plaintiff and Kiser, he might, had he so elected, have recovered from Daum and Meyer. For the default, which would warrant a recovery against the parties to the second bond, would have been a default in the condition of the first bond.

The second bond is not intended or required to be given for the benefit of the sureties on the original administration bond, but solely for the benefit of the estate of the decedent. The only benefit they can derive therefrom, is the incidental benefit of contribution from the sureties on the second bond, if they are compelled to answer for a default of a condition of the original bond, which is also a condition of the second bond. The second bond does not in any way enlarge or diminish the obligation of the first, or extend or limit or affect the performance of the conditions thereof; but the first bond simply remains in force, and the sureties remain liable thereon,, in all respects, as if the second bond was not given or required to be given, except as to such right of contribution, from the sureties on the second bond.

The sureties on the original administraion bond thus remaining liable, and the sureties on the additional bond thus becoming liable for the performance of this duty of their common principal, they have a common obligation, although one arising upon different instruments, to answer for the default of their common principal, in the case of his failure to account for, and pay over to the person entitled thereto, the proceeds of the sale of his decedent's real estate.

Having thus disposed of the first question arising upon this motion, in the affirmative, we come now to the second, and in order to determine this, it becomes necessary to consider the nature of the rights and remedies between co-sureties. The right of contribution was originally a creature of equity, and depended upon equitable principles wholly. It has been universally held by the courts of England, as well as those of this country, including those of our own state, that this right rests upon the principle, that where parties stand in equali jure, equity, which delights in equality, will decree that the discharge from a common obligation, which inures to the equal benefit of all, shall be obained at their equal expense. But, although having its origin in equity, this principle, like so many others, has been adopted by law; and based upon it, the law raises an implied promise on the part of each co-surety, to pay his part of the loss resulting from a concurrent liability to pay a common debt.

In Russell v. Failor, 1 Ohio St., 327, 330, the court, by Bartley, C. J., say: "The right of contribution among sureties is founded not in the contract of suretyship, but is the result of a general principle of equity which equalizes burdens and benefits. The common law has adopted and given effect to this equitable principle on which a surety is entitled to contribution from his co-surety. This equitable obligation to contribute having been established, the law raises an implied assumpsit on the part of the co surety, to pay his share of the loss resulting from a concurrent liability to pay a common debt. This jurisdiction, by an action of law, is, therefore, re-

sorted to, when the case is not complicated; and the more extensive and efficient aid of a court of equity is thus rendered unnecessary."

Also in Hartwell v. Smith, 15 Ohio St., 200, 203, 204. And by syllabus 2, in Camp v Boswick, 20 Ohio St., 337, it is held that: "The right to contribution among co-sureties is not founded on the contract of suretyship, but is based on equity arising from the relation of co-sureties." And by syllabus 5, in the same case: That "the right of action for contribution among co-sureties accrues when one has paid more than his proportion of their liability." And, in this case, on pages 346, 347, McIlvaine, J., says: "The doctrine of subrogation has its origin in the relation of principal and surety, whereby a surety who pays the debt of his principal is, in equity, substituted in the place of the creditor, and is entitled to all the rights which the creditor may have against the principal. But the doctrine of contribution has its origin in the relation of co-sureties or other joint promisors in the same degree of obligation. It is not founded upon the contract of suretyship. It is an equity which springs up at the time the relation of co-sureties is entered into, and ripens into a cause of action when one surety pays more than his proportion of the debt. From this relation the common law implies a promise to contribute in case of unequal payments by co-sureties. But equity resorts to no such fiction. It equalizes burdens and recognizes and enforces the reasonable expectations of co-sureties because it is just and right in good morals, and not because of any supposed promise between them. This equity having once arisen between co-sureties, this reasonable expectation that each will bear his share of the burden is, as it were, a vested right in each, and remains for his protection until he is released from all his liability in excess of his ratable share of the burden. Neither the creditor, the principal, the statute of limitations, nor the death of a party can take it away."

And in the case last cited, the right of contribution was enforced in equity, although the statute of limitations had long before barred an action at law.

And, by syllabus 1, in Oldham v. Broom, 28 Ohio St., 41, it is held that: "The right of contribution among co-sureties is not founded in contract, and does not depend on the form of the instrument nor the position of the names of the obligors therein, but is the result of the general principles of equity, and depends on the actual relation they sustain to the instrument and to each other." And, in the same csase, on page 48 ,Johnson, J., says: "The right of contribution among sureties is not founded in contract, but is the result of principles of equity on the ground of equality of burdens and benefits."

"For this reason, where several parties by the same or by distinct instruments be-

come sureties for the payment of a sum of money, and one pays more than his share, he may compel contribution from the others as co-sureties."

"Courts of law took jursdiction of action for contribution, on the ground that, as equity and good conscience demanded that as among co-sureties there should be equality of burdens, there was an implied assumpsit, which would support an action at law."

There is a distinction, however, between the remedy at law based upon the implied assumpsit, and the remedy in equity based upon the equitable principle of equality solely, in this, as stated in the Am., & Eng. Enc. of Law, Vol. 24, page 809-81, as follows: "If one of several sureties is obliged to pay the whole debt, he can enforce contribution from the other sureties so as to divide and equalize the loss. He can recover in equity a pro rata amount paid by taking into account the number of solvent sureties, but excluding the insolvent ones. In law he can only recover from each of his co sureties the portion of the debt for which each is liable, taking into consideration the whole number of sureties, both solvent and insolvent."

And in Vol. 4, of the same work, it is said in note 1, on page 2, that: "While contribution was originally only enforceable by courts of equity, subsequently jurisdiction was assumed by courts of law and relief administered on the ground of implied assumpsit. The juirsdiction of equity, however, to enforce contribution, remains unimpaired. And the remedy in equity is in many respects superior. In equity the rights of all the parties can be fully adjusted and protected." And a large number of cases are cited to sustain these proportions.

In Chipman v. Merrill, 20 Cal., 135, the court, per Field, J. J., says: "In many cases, especially where the sureties were numerous, and some of them were insolvent, or where some of the sureties had died, courts of equity were alone adequate to afford complete remedy."

In Parsons on Contracts, vol. 1, page 34, the rule above given is thus stated: "At law a surety can recover from his co surety an aliquot part, calculated upon the whole number; but in equity it is otherwise."

And to the same effect are Chitty on Contracts,, 5th Am. Ed., 597-598. Story's Equity Jurisprudence, sectin 496. And many adjudicated cases.

In Easterly v. Barber, 66 N. Y., 433, the court, by Miller, J., say: "It is claimed that an action at law by a surety for contribution, must be against each of the sureties separately for his proportion, and that no more can be recovered, even where one or more are insolvent. In the latter case, the action must be in equity against all the co-sureties, the amount will be adjusted among the solvent parties in due proportion."

And again, in Willard's Equity Jurisprudence, it is said: "There seems to be a

propriety in the rule that where sureties are called upon to contribute, and some of them are insolvent, that all the parties should be brought into court and a decree made upon equitable principles in reference to the alleged insolvency. There should be a remedy decreed against the insolvent parties, which may be enforced if they become afterwards able to pay, and this can only be done in a court of equity and when they are parties to the action.''

The allegations of the petition in the case under consideration are clearly sufficient to bring the case within the jurisdiction of a court of equity, under the rules cited.

But it is claimed that the prayer of the petition being for a personal judgment, the case must be treated as being an action at law, and that consequently it can only be maintained against one of the plaintiff's co-sureties separately, and not against all or more than one of them, jointly; and that therefore, it does not appear upon the face of the petition that the defendants, Daum and Meyer, or either of them, is rightfully joined in the action, with the defendant, Kiser; but, on the contrary, that it affirmatively appears on the face of the petition, that the defendants, Daum and Meyer, and each of them are improperly joined with the defendant, Kiser, and that for that reason the court cannot acquire jurisdiction of the persons of both, or either of said defendants, Daum and Meyer, by service without the county in which the action is brought, under the rule in Drea v. Carrington, cited, supra.

In McCrory v. Parks, 18 Ohio St., 1, as appears from the statement of the case, on page 2, the plaintiff brought his original action against Parks and two more of five co-sureties with the plaintiff, on a sheriff's official bond, alleging that he had been compelled to pay a judgment of amercement against the sheriff, amounting to $116; that of the two co-sureties not made parties. one had paid him one-fifth of the amount so paid on said judgment, and the other had died insolvent. The prayer of the petition was for judgment against each of the defendants, severally, or his respective proportion of the money so paid on said judgment, and for general relief. Both of the other defendants were in default for the answer, and a separate judgment was rendered against each of them for $24.30, and one-third of the costs of the action. The defendant, Parks, however, answered admitting the petition to be true, and that he was liable for his proportionate amount of the $116, but claiming, by way of cross-petition, a much larger sum for contribution on another alleged judgment of amercement, against the sheriff, which he claimed to have been compelled to pay. The plaintiff replied setting up fraud on the part of Parks, and that he had not in fact paid any amount on said last judgment, otherwise than by paying the same in satisfaction of his own debt. A demurrer to the reply was overruled, and judgment was

rendered in favor of McCrory, against Parks, for $26.10, and the remainder of the costs. The question in the supreme court, being whether or not the action was appealable, it was contended by the defendant's counsel, that: ''The petition of McCrory is framed alone upon his strict legal rights; he seeks legal and not equitable relief; so that we are not called upon to determine what may have been or may now be the equitable rights of the parties under a petition properly framed for that purpose. The answer and cross-petition of Parks did not change the character of the action.''

But the supreme court determined otherwise, holding that neither party was entitled to demand a trial by jury, and that consequently the action was appealable to the district court. And, in the opinion by Day, C. J. (on page 8), it is said: ''The ultimate purpose of the action was, undoubtedly, the recovery of money. But the case made both in the petition and cross-petition is not one where a money judgment, merely, is sought by one party against another. In both, one party is seeking to recover against several parties, in a case where, though they are mutually liable, each one stands upon his own individual right, and a joint judgment cannot be rendered against them. The liabilities existing between co-sureties are always to be settled upon principles of equity and justice. From the nature of the case, each party is entitled to an account. to determine either the fact, or extent, of his liability. In a suit by one against several co-sureties, the object of the action is to enforce an account to determine the equities between them, and, as a result of the settlement, to obtain such orders and judgments as may be equitable and just between the parties.''

The allegations of fact contained in the petition in the case now before the court bring the action within the rules thus quoted; and it may be said as a perfect answer to the claim of the defendants making this motion, that by the provisions of section 5060, Revised Statutes, the petition is only required to contain, by way of prayer, ''a demand for the relief to which the party supposes himself entitled,'' and, as is said by Welch, C. J., in the case of Corry v. Gaynor, 21 Ohio St., 277-280.

''It is the statement of facts, and not the prayer contained in the petition, which gives character to the action, etc.'' And he adds, ''True, where the facts stated entitled the plaintiff to elect between two remedies, to either of which the facts show him to be entitled, the prayer may determine the character of the action, because in itself it is an election.''

The relief demanded by the plaintiff in his petition in the case at bar, is in form a joint judgment for money against all of the defendants. Although it must be presumed that this is the relief to which he supposes himself entitled, yet, he is not entitled to that relief, either in an action at

law or in equity; and this mistaken demand cannot be considered as an election by him, between two remedies, one of which he was entitled to have in the pending action, against all his co-sureties, and the other of which he could only have against each one of them, in separate suits against each respectively.

In Reed's Admr. v. Reed, et al., 25 Ohio St., 422, the plaintiffs in the original case, set up facts in their petition, which would warrant the setting aside of the administrator's accounting in the court by which he was appointed, and the compelling of a new accounting and payment by him to the plaintiffs of the amount found due on such accounting. But, without asking for an account, or praying that the fraudulent settlement be set aside, they demanded judgment thereon for the sum of six thousand dollars. In determining the question of whether the original action was for money only, White, J., on page 424, says: "If we look to the prayer of the petition alone it appears to be an action for the recovery of money only. But if we look to the case made, or facts stated in the petition, it plainly appears to be an action to set aside a fraudulent settlement, and compel an account by an administrator or trustee. The case made in the petition, as well as the prayer, must be looked to in determining the character of the action. In view of the facts stated, the prayer of the petition must be understood merely as a prayer that the amount to be found due from the defendant, after setting aside the fraudulent settlement, and compelling him to come to a just account, shall be recovered by plaintiff."

Without extending or going beyond the rule thus stated and applied in the case last cited, we may well hold in this case, that the prayer of judgment for the amount therein named, against all of the defendants, must be understood merely as a prayer that the plaintiff may have judgment against each of the said defendants, for such an amount as shall be found due from such defendant respectively, upon a just accounting between all of the parties who are named as defendants to the action.

But without this, as is said by Johnson, C. J., in Culver v. Rodgers, 33 Ohio St., 537-540. "While the demand for relief forms part of the petition, yet it constitutes no part of the statement of facts constituting the cause of action. This demand or prayer may be amended to conform the relief to the facts proved, and after verdict or finding and judgment upon the merits, a defective demand for relief may be cured."

But, however we treat the prayer, the allegations of the petition, that is the statement of facts contained therein, make a case upon its face, in which all of he co-sureties with the plaintiff, Kiser, Daum and Meyer, are rightfully joined; and service of summons having been made upon the defendant, Kiser, within the county of Defiance in which the action is brought, summons was properly issued to the sheriff of Henry County, and by him duly served upon the said defendants, Daum and Meyer, therein. By such service the court has obtained jurisdiction of the persons of the said defendants, Daum and Meyer, and their said motion must be overruled. This view of the case renders it unnecessary to decide whether or not the defendant. LeSeuer, the principal debtor, stands in such relation to the case, that it may be said to be rightly brought against him, within the meaning and intent of section 5038, Revised Statutes, so as to enable the court to acquire jurisdiction of the persons of the defendants, Daum and Meyer, by service of summons in another county. But, without deciding this question, we have no hesitation in saying that he is a proper party at least, to this action. In the case of Cunent & Hibler v. Thompson, 2 C. S. C. Rep., 54-55, cited in the brief of counsel for the defendants, Daum and Meyer, on this motion, decided by the Superior Court of Cincinnati, at special term, 1870, it was held by Taft, J. that: "One of the several co-sureties on a sheriff's official bond, who has been compelled to pay a judgment recovered against him for a breach of duty by the sheriff, may maintain an action against the sheriff as principal for the whole amount paid by him, and against his co-suretis for a contribution in the same suit; and his petition is not demurrable on that account. He may, at his option, however, sue the sheriff and his co-sureties in separate actions."

The judgment, which the plaintiff in the case at bar, avers that he has been compelled to pay, was rendered in an action of Rohrs, Admr., etc. v. LeSeuer, Kehnast and Kiser, to which the defendants herein, Daum and Meyer, were not parties. If, therefore, they or either of them are compelled to repay to the plaintiff, Kehnast, any part of the money which he claims to have paid for the common benefit of himself and co-sureties, they are entitled to be repaid by the comomr principal, LeSeuer; and all of the co-sureties are entitled to be subrogated to the rights of Rohrs, administrator, etc., in proportion or the amounts which they are respectively required to ultimately pay, by reason of his default; or to sue him as individual plaintiffs, in separate suits. Why should not an accounting be had as well between the co-sureties and their principal, as between the said co-sureties themselves, in the same action; and the rights of all fixed and adjudicated by the proper decree and orders of a court of equity, and a new brood of suits saved? And this especially, where the same proofs substantially, are required to be heard, in order to take the account between the co-sureties themselves, as are required to take an account between the several sureties and their principal?

We think that there is no good reason why this should not be done; but that, on

the contrary, it is just what should be done in this action.

The motion is therefore overruled.

Hill & Baker,, for Plaintiff.

Martin Knupp, for Defendant, Daum & Meyer.