BLOM-COLLIER COMPANY, Appellant, v. J. W. MARTIN, Defendant; J. R. SMITH, Interpleader, Respondent.

Kansas City Court of Appeals, April 6, 1903.

1. **Attachment:** GARNISHMENT: INTERPLEA: SHERIFF'S RETURN: PAROL EVIDENCE. Where a garnishment is abandoned and the garnishee interpleads for the goods, the return of the sheriff showing garnishment on a certain date is not conclusive upon the interpleader, who may show by parol evidence that it is not true.

2. ———: INTERPLEADER: EVIDENCE: APPELLATE PRACTICE: LAW: EQUITY. An interplea into an attachment suit is not a proceeding in equity, but a case at law, and the appellate court can not interfere with the finding because there is a great preponderance of evidence one way; and on the conflict of evidence the trial court is in a better position than the appellate court to judge of its credibility.

3. ———: INTERPLEA: INSTRUCTION: INVITED ERROR: APPELLATE PRACTICE. An appellant can not complain of certain instructions relating to notice of fraud in making a sale of goods where he invited the error in his own instructions.

4. ———: ———: FRAUD: INSTRUCTIONS: NOTICE: MORTGAGE. An instruction relating to the payment by interpleader of a mortgage debt on purchased stock of goods is condemned since it fails to submit the question of fraud in the transaction, as the mortgage may have been used to cover the fraud of defendant; and if the interpleader had notice or its equivalent he would become a participant in the fraud, which was a question for the jury.

Appeal from Sullivan Circuit Court.—*Hon. John P. Butler,* Judge.

REVERSED AND REMANDED.

*Ellison & Campbell* and *Higbee & Mills* for appellant.

(1) The sale by Martin to Smith of the stock of goods has all the earmarks of fraud. (2) The reading of the attachment writ to Smith and the garnishment were notice of imputed bad faith in the sale, and payment thereafter would not protect Smith or vest title in him as against attaching creditors. Wetmore v. Woods, 62 Mo. App. 265; Arnholt v. Hartwig, 73 Mo. 485; Dougherty v. Cooper, 77 Mo. 529; Shoe Co. v. Lisman, 149 Mo. 85. Information which should put one on inquiry is actual notice. Edwards v. Railroad, 82 Mo. App. 96; Bank v. Tobacco Co., 155 Mo. 602; Mohr v. Langan, 162 Mo. 495. (3) Smith could not shut his eyes and stop his ears and be heard to say "I did not see nor hear of any fraud." He was bound to take notice of obvious facts and conditions, and to draw correct inferences and conclusions. Honest men do not usually buy and sell or exchange stocks of merchandise for farms after night for a lump price without an invoice, call lawyers out of their beds to write contracts and after garnishment by attaching creditors make a voluntary deed to the debtor's wife. These are the indicia and badges of fraud. Bank v. Tobacco Co., 155 Mo. 602, 609; Dougherty v. Cooper, 77 Mo. 529, 532. No inquiry for debts. Van Raalte v. Harrington, 101 Mo. 602. Unusual method of transacting business, apparently done with a view for effect. State v. O'Neill, 151 Mo. 69; Snell v. Harrison, 104 Mo. 158. (4) That Smith paid for these goods after garnishment and positive notice of Martin's fraud and put the title to the Barton county land in Mrs. Martin at his own sugges-

tion, is conclusively established by his evidence on cross-examination at the April term. His complete change of front at the October term is palpable perjury. State v. Prendible, 65 S. W. 559; State v. Huff, 161 Mo. 459; Sells v. Tootle, 61 S. W. 582; Abbott's Trial Brief, 453, par. 48. (5) Again, if Smith had notice of Martin's intended fraud, it was not required that he should have been privy to Martin's fraud. Dougherty v. Cooper, 77 Mo. 528; Shoe Co. v. Prickett, 84 Mo. App. 94, foot 99; Bank v. Tobacco Co., 155 Mo. 602. (6) Again, "the plea of being an innocent purchaser is an affirmative defense. The onus is on the pleader." Stephenson v. Kilpatrick, 65 S. W. 773. (7) There was not a scintilla of evidence to warrant the court in giving the eighth declaration for interpleader. (8) The sheriff's return shows that Smith was garnished and the writ read to him on July 20. This return was copied into the transcript which was filed by the interpleader on his change of venue to Judge Butler's court. No motion had ever been filed by interpleader to have this return amended. It is conclusive in this case, as to time, manner and fact of service and not subject to collateral impeachment. Anthony v. Bartholow, 69 Mo. 186; Bank v. Seeman, 79 Mo. 527; Heath v. Railroad, 83 Mo. 718. The verity of the return can not be disputed collaterally. 1 Wharton Ev., sec. 833a, par. 3, p. 774. (9) Taking the deed to Mrs. Martin was a fraud on Martin's creditors. It was voluntary as to her. Bank v. Price, 41 Mo. App. 291.

*Fogle & Eason, Crawley & Son, F. C. Sasse* and *Kinley & Kinley* for respondent.

(1) This being a case at law, the appellate court will not look further than to see if there is any evidence to support the finding of the court or jury. Weil v. Lorie, 167 Mo. 125. (2) It will be seen that appellant asked instructions containing the same propositions that

are in the declarations of the interpleader. The error, if error, being committed by appellant, then appellant can not take advantage of it in the appellate court. The maxim *communis error facit* applies in this case very strongly. Self-invited error is no grounds for reversal. Noble v. Blount, 77 Mo. 241; Leabo v. Goode, 61 Mo. 126; Holmes v. Braidwood, 82 Mo. 610; Hazell v. Bank, 95 Mo. 60; Make v. Railroad, 89 Mo. 650; Railroad v. Vivian, 33 Mo. App. 583; Phelps v. Salisbury, 161 Mo. 1. (3) The testimony does not show that Martin disposed of the stock of goods with intent to hinder or delay his creditors and so far as the testimony is concerned, Martin may be entirely solvent. It devolved on plaintiff and not the interpleader, to show these things, and plaintiff failing so to do, there can be no presumptions indulged in to aid plaintiff's defense. (4) The instructions as a whole fairly presented the law of the case. (5) The burden did not rest on the interpleader to show that Martin's intention was not to defraud his creditors. All the interpleader had to do was to show he bought and took possession of the goods, and knew nothing about the vendor's intention to defraud his creditors, if he had such intention.

BROADDUS, J.—This suit was instituted in the Schuyler Circuit Court and taken to Sullivan county on change of venue where it was tried before the judge, the parties having waived a jury. The petition was filed and writ of attachment issued on the 20th day of July, 1898. The sheriff's return shows that on the day the writ was issued defendant Martin was served with process, and interpleader Smith was garnisheed and the writ of attachment read to him, but the goods in controversy were not then seized under the writ. After hearing all the evidence the court found for the interpleader and plaintiff appealed. The principal contention is, that the finding was not supported by the evidence.

It was shown at the trial that on July 5, 1898, the interpleader, who had been informed by a person named Lile, that defendant Martin wanted to sell the goods in dispute, for the first time met him in his store in Queen City, Missouri. After a casual inspection, the interpleader proposed to trade his equity of redemption in certain lands in Barton county for the goods. Defendant proposed to trade if interpleader would give him a difference of $500, provided the land was as described. Without any definite conclusion between the parties, interpleader went away. Soon thereafter defendant made inquiry as to the land, and on July 12 telegraphed interpleader to come to his place.    On the 13th of July interpleader arrived in Queen City and the proposed exchange was agreed upon and reduced to writing, by the terms of which interpleader undertook to convey to defendant the land in question, subject to a mortgage for $2,400, and to pay him $500 out of the proceeds of sale of goods, and defendant put interpleader into possession of the said goods. It was also made to appear that interpleader himself owed $500 on the land, and that he could not get his deed therefor until this debt was discharged. It was shown that defendant had never seen the land named; that no invoice was taken of the goods; that the bargain was concluded as late as nine or ten o'clock at night; that an attorney was then sent for who drew the writing evidencing the trade; and that Stanley, defendant's clerk, was awakened and informed of the change of ownership of the goods, and that he was to be employed by the purchaser, the interpleader. At midnight, interpleader took a train for Kansas City, stating that he would return and complete the transaction as soon as he could get his abstract and deed to the land.

On about the 26th of July interpleader again went to Queen City, at which time he found a man by the name of Warnick in possession of the goods for Mrs. L. F. Warnick, who was claiming then under a mortgage. Wm. Saxbury, a lawyer, advised interpleader to

pay the $500, which, by the agreement, was to be paid out of the receipts of sale of goods, and have it applied in satisfaction of said mortgage. Interpleader, on this advice, gave a check for the amount, which satisfied the mortgagee's claim for the goods. Whereupon said Warnick left the store and goods in his possession. There is some controversy as to the time when and the circumstances under which the payment was made, and whether before or after interpleader was served with garnishment notice. Although the sheriff's return shows, as has been stated, that interpleader was garnisheed on the 20th of July, there was evidence tending to show that such service was not made until the 28th of July and after interpleader had paid the $500 on the purchase price of the goods.

Instead of conveying the land to defendant, interpleader, upon the written order of defendant, conveyed it to the latter's wife. While being cross-examined he denied having any knowledge of who wrote said order, but upon its being shown to him he stated that he was mistaken—that it was in his handwriting. He further stated that he had nothing to do with the insertion of defendant Martin's wife as grantee in the deed he executed conveying the land, but afterwards admitted having written an order from defendant to insert his wife's name as such grantee. He also made misstatements in reference to the check for $500 which was taken in payment of the goods; and made more than one mistake as to the day on which he was served as garnishee. A witness by the name of Booth testified, in substance, that he was present (after Warnick got possession of the goods under the mortgage) when defendant, interpleader and Warnick were together, at which time he heard Warnick say that he "would not close the deal until the check was made to Mrs. Warnick and the deed made to Mrs. Martin." It was shown by this witness that defendant's wife was a daughter of said Warnick.

After giving several declarations of law for both

sides, the court found for interpleader, and the plaintiff appealed. The contention of plaintiff is that the evidence did not justify the finding, and that the court mistook the law.

The plaintiffs are in error in their claim that the sheriff's return, showing that interpleader was served with garnishment July 20, 1898, is conclusive and not subject to contradiction. Such would have been the rule had not the plaintiffs abandoned their garnishment, but as the interpleader, after such abandonment, was in no way a party to the attachment proceedings, he would not be bound by such return, and was authorized to show by evidence that it was not true.

It must be admitted that the evidence went strongly to show that interpleader, before he paid the $500 to Warnick and conveyed the land to defendant's wife, had such knowledge and information of the intent of defendant to defraud his creditors as to put a prudent person on inquiry, which was equivalent to actual notice of such fact. Edwards v. Railway, 82 Mo. App. 96, and cases cited. The interpleader misstated some of the most important facts in the case, which he persisted in until confronted with his own handwriting showing that they were untrue; but as the judge who tried the case and saw the witness on the stand was in much better position than we are to judge of his credibility, we are not justified in holding that he was not entitled to belief, and for that reason failed to prove his case as plaintiff contends. This is not an equity case where the appellate court may review all the evidence and make a finding of its own, but it is a case at law where this court is not authorized to interfere because there has been a great preponderance of evidence one way.

The plaintiff contends that the court committed error in declaring, as a matter of law, in behalf of interpleader, that in order to attach fraud to the transaction in question, it was necessary to show that inter-

pleader had not only notice of the fraudulent intent of the defendant making the sale of the goods, but that he participated in aiding him in doing so. Without deciding whether the declaration was or was not good law, it seems that the plaintiff invited the error, if it be an error, by embodying the same theory in the declarations they asked and obtained of the court. Noble v. Blount, 77 Mo. 241; Phelps v. Salisbury, 161 Mo. 1; Railway v. Vivian, 33 Mo. App. 583.

But a more serious objection is made to interpleader's declaration of law number eight. This instruction, in substance, is, that if the court finds that there was a settlement by interpleader, defendant and Warnick, whereby Warnick demanded that interpleader make a deed to the land in question to defendant's wife, and that interpleader paid him for Mrs. Warnick $500 to be applied on the mortgage debt, and that the said Warnick would then redeliver possession of the goods to interpleader, and the latter so contracted, the finding would be for said interpleader, if the court further find that the arrangement was carried out by the parties. The vice of this instruction is, in our opinion, that it eliminates the question of the fraudulent intention of the parties altogether. It seems to us that if such an arrangement was made its effect was to use the mortgage as an instrument to cover up the fraud of defendant. Mrs. Warnick, it is true, was the owner of the mortgage debt covering the goods in question, and had the right to have her claim as such mortgagee satisfied before she redelivered the goods to the interpleader, but she held no lien against the land in question. The conveyance of the land by the interpleader to defendant's wife, the daughter of the Warnicks, in pursuance of said alleged agreement was without consideration, and as such was fraudulent as to creditors, and if interpleader had notice, or its equivalent, that such would be its effect he became a participant in the fraud. But under the theory of the court as contained in said dec-

laration of law, whether fraudulent or not it gave interpleader a good title to the merchandise. The value of the land was not treated as part consideration for a surrender of the goods to interpleader as Mrs. Warnick did not get the land herself but had it conveyed to her daughter. It was indirectly a deed of gift by defendant to his wife, an act which was consummated by the aid of interpleader; and such being the case, it was a pertinent inquiry whether he had participated with notice or knowledge of the intention on the part of the defendant to defraud his creditors.

For this reason the cause is reversed and remanded. All concur.