The Attorney General is in receipt of your request for an opinion on the following questions: "Are earnings of an insurer paid, or agreed to be paid, to the holder of a series of the insurer's participating stock 'compensation for writing or handling credit life insurance or credit disability insurance' within the contemplation of Rule 69-8, Section 6 of the Oklahoma Insurance Regulations when: "1. Said participating stockholder or its affiliate, subsidiary, director, officer or other representative is an agent of said insurer; and "2. The amount of any distribution paid, or agreed to be paid to the participating stockholder, is based primarily upon the underwriting profitability of only that insurance placed with the insurer by said participating stockholder/agent or the participating stockholder's affiliate, associate, subsidiary, director, officer, employee or other representative who is an agent of the insurer." By way of background, the provisions of the Uniform Commercial Credit Code (UCCG), adopted by the State of Oklahoma and codified as 14A O.S. 1-101 [14A-1-101] et seq. (1971), authorize the Insurance Department of the State ("Commissioner") to issue and enforce rules with respect to premium rates charged by carriers issuing credit life insurance and credit disability insurance. UCCC 4-112. It is unnecessary to this opinion to define the terms "credit life" and "credit disability" insurance as used in the UCCC; suffice it to say that such insurance is intended to insure the payments of debt governed by the UCCC in the event of the death or disability of the debtor. In authorizing the Commissioner to promulgate rules with respect to such credit insurance, the Legislature in UCCC 4-203 (2) established a "benchmark" by which the Commissioner was authorized to measure the propriety of premium rates. In directory form, 4-203(2) mandates that premium rates or charges for such credit insurance shall be disapproved inter alia: 1. ". . . if the premium rates or charges are unreasonable in relation to the benefits provided under the form . . . ." or 2. ". . . if contrary to any provision of the Oklahoma Insurance Code 36 O.S. 101 [36-101] et seq. (1971), as amended or of any rule or regulation promulgated thereunder." Pursuant to authority of statute, the Commissioner promulgated what is officially designated as Rule 69-8 for the regulation of such credit insurance. That portion of Rule 69-8 applicable to your question is denominated as Section 6, and, as amended by Rule 70-5, provides: "Section 6 — Creditor, Agent or Broken Compensation "It shall be presumed that the premium rates charged or to be charged are excessive in relationship to the benefits if the compensation for writing or handling credit life insurance or credit disability insurance paid or agreed to be paid to any creditor, agent or broker, or any affiliate, associate, subsidiary, director, officer, employee or other representative of such creditor, agent or broker, exceeds 40% of the premium rates permitted herein. "Compensation" as used herein is defined as including commissions, service fees, brokerage fees, expense allowances, dividends, experience rating refunds, rate credits and the like. Any insurer paying or agreeing to pay compensation in excess of 40% of the premium rates herein permitted, shall submit credible statistics to the Insurance Department to confirm that the premium rate or rates used or to be used by the insurer will produce the loss ratio set forth in Section 4 50% of premium and that adequate funds will still be available to the insurer to pay the expenses of the insurer chargeable to such insurance." An analysis of 6 of Rule 69-8 indicates that a presumption exists that "compensation" paid to any creditor, agent or broker, or their representatives, in excess of 40% of premium are excessive in relationship to benefits to compensation. The presumption may be rebutted upon a proper showing to the Commissioner. The term "compensation" to which the 40% limit applies is defined as including "commissions, service fees, brokerage fees, expense allowances, dividends, experience rating refunds, rate credits and the like" payable by the insurance carrier to any creditor, agent or broker or any of their affiliates, associates, subsidiaries, directors, officers, employees or other representatives." Your question contemplates a situation in which an insurer, in addition to stock ownership which is intended to constitute the capital and surplus required under Oklahoma law governing the formation of insurance companies, offers and sells "participating stock," that is, a separate category of stock sold to persons, firms or corporations that place or cause credit insurance to be issued by the insurer which, when such insurance is issued, yields a direct benefit to the "participating" stockholder proportionately to the business placed with the insurer. Initially, it should be noted that the Oklahoma Business Corporations Act, codified at 18 O.S. 1.1 [18-1.1] et seq. (1971), as amended, does not specifically define or describe what has been referred to as "participating" stock. For purposes of this opinion, however, an owner of "participating" stock, is deemed to be one who, for the purchase of such stock, is only entitled to a direct benefit or dividend placed or acquired through the identifiable efforts of the participating stockholder. Translated, the participating shareholder's return on investment is calculated only on the net profit of business directly caused by the shareholder to be placed with the insurance carrier and not as an incident of the profits of the carrier as a whole. As defined by this opinion, agents' commissions may be payable to the shareholder or the shareholder's designee. Your question is concerned only with two (2) conditions of fact when the preceding discussion is considered in light of Rule 69-8, Section 6: first, that the entity (agent) receiving the compensation for placing the insurance business with a carrier is a participating stockholder or the stockholder's affiliate, subsidiary, director, officer or other representative, and, second, that the shareholder's return on investment (distribution of profit) is limited, in addition to the agents' compensation, to a calculation of the net profitability of the insurance business placed with the carrier. When read as a whole, Rule 69-8 contemplates three (3) categories of expenditures from the premium dollar, absent special filings or extraordinary circumstances: 50% of the premium dollar is to be set aside for payment of claims or as claim reserves (4); 40% of the premium dollar is allocated as "compensation" for the creditor, agent or broker for placing the business with the carrier (6); while not expressly identified as such, the remaining 10% of the premium dollar is left with the carrier for defraying administrative expense. The percentages recited are (1) the minimum claims reserves allocations, (2) the maximum allowable compensation for agent's compensations and (3) the minimum allowance for the insurer's overhead. To adjust the percentages otherwise, in perspective of Rule 69-8, would be to call into question whether the premiums charged for credit insurance "are excessive in relationship to the benefits" of the policy of credit insurance. Having established section 6 as an expression of a maximum rate of "compensation" to be paid to any creditor, agent or broker (or the affiliate thereof), any dividend or distribution of earnings which is proportionate to the profitability of the business placed with the insurer and which, when added to the compensation paid to the creditor, agent or broker (or the affiliate thereof), permits an aggregate return in excess of the 40% compensation limit to such creditor, agent or broker (or affiliate) is violative of Section 6, Rule 69-8 of the Commission, absent the special circumstances described in section 6. It is, therefore, the official opinion of the Attorney General that a participating shareholder of a credit life or disability insurance company who, in addition to compensation paid to or for the benefit of the shareholder, receives, directly or indirectly, a dividend or distribution of earnings solely calculated or derived from the profits of insurance business placed with the insurer which operates to permit a return to such shareholder in excess of the prescribed percentage limits of premium is violative of rules promulgated under authority of 14A O.S. 4-203 [14A-4-203](b) (1971). (MANVILLE T. BUFORD) (ksg)